**No. 21-11180**

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

ALLYSON RASKIN, *on behalf of her minor children* JD1 and JD2,
*Plaintiff—Appellant*

v.

DALLAS INDEPENDENT SCHOOL DISTRICT; DALLAS INDEPENDENT SCHOOL DISTRICT BOARD OF TRUSTEES; MICHAEL HINOJOSA, *Superintendent of the Dallas Independent School District in his individual capacity and in his official capacity as Superintendent of the Dallas Independent School District*; BEN MACKEY, *President*; EDWIN FLORES, *1st Vice President*; MAXIE JOHNSON, *2nd Vice President*; JOE CARREON, *Board Secretary*; DUSTIN MARSHALL; DAN MICCICHE; KARLA GARCIA; JOYCE FOREMAN; JUSTIN HENRY, *all in their individual capacities and in their capacities as Members of the Dallas Indpendent School District Board of Trustees*,
*Defendants—Appellees*,

On Appeal from the United States District Court, Northern District of Texas, Dallas Division, No. 3:21-cv-2429-L, Honorable Sam A. Lindsay, Presiding.

## BRIEF OF COURT-APPOINTED AMICUS CURIAE SUPPORTING APPELLANT ALLYSON RASKIN AND REVERSAL

Cody W. Stafford
DOBROWSKI STAFFORD LLP
4601 Washington Ave, Suite 300
Houston, Texas 77007
(713) 659-2900
cstafford@doblaw.com

*Court-Appointed Amicus Curiae*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would likely help the Court for a couple of reasons.

For one, the question of whether non-attorney parents can—and should be able to—represent their minor children pro se in federal court is an important one with constitutional implications. To properly decide that issue, the Court will need to consider the rights of minors to seek relief from federal courts, the rights of parents to protect the interests of their children and make decisions concerning their families, and the obligations of district courts to protect child litigants.

For another, a strict application of the rule preventing parents from representing their children pro se can seriously impair children's legal rights and their ability to obtain judicial relief—especially when their family has limited financial means. As a result, this counsel urges the Court to reconsider its approach to parents representing their minor children pro se. Whether (and how) to modify this rule merits discussion in oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................... 2

TABLE OF CONTENTS ................................................................ 3

TABLE OF AUTHORITIES ........................................................... 5

IDENTITY & INTEREST OF AMICUS CURIAE ................................. 7

INTRODUCTION ...................................................................... 8

ARGUMENT .......................................................................... 10

A.   Non-attorney parents usually cannot assert claims on behalf of their minor children while proceeding pro se, but federal courts have developed equitable exceptions. ................................................. 10

B.   When inflexibly applied, the counsel mandate contravenes Rule 17(c). ......... 13

C.   A rigid counsel mandate is unnecessary to protect children and courts from the unauthorized practice of law. ........................................ 14

D.   An unyielding counsel mandate can infringe the constitutional rights of both parents and children ..................................................... 16

    1.   The counsel mandate can exclude families with limited financial resources—and those with mostly non-monetary claims—from federal court .................................................................. 16

    2.   The counsel mandate infringes the constitutional rights of minors.... 18

    3.   The counsel mandate can interfere with liberty interests granted to parents and families. ................................................... 19

    4.   The counsel mandate can create an undue hardship for families with unpopular or minority views ........................................ 21

E.   Under Rule 17(c), courts should consider case-by-case whether (and how) to apply the counsel mandate. ................................................. 21

1.    The equitable exceptions courts apply in social security cases are an excellent guide for all cases............................................................ 22

2.    The Court should empower district courts to consider the need for counsel based on the unique circumstances of each case. .................. 24

CONCLUSION & PRAYER ............................................................ 26

CERTIFICATE OF SERVICE .......................................................... 26

CERTIFICATE OF COMPLIANCE .................................................. 27

# Table of Authorities

**Page(s)**

**Cases**

*Aduddle v. Body,* 277 F. App'x 459 (5th Cir. 2008) ..................................................10

*Bellotti v. Baird*, 443 U.S. 622 (1979) ........................................................................18

*Boddie v. Connecticut,* 401 U.S. 371 (1971) .............................................................19

*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ...............18

*Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142 (1907)..........................................19

*Chatman v. Mississippi High Sch. Athletics Ass'n,*
   552 F. App'x 335 (5th Cir. 2014)..........................................................................10

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59 (2d Cir. 1990).....10, 15

*Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576 (11th Cir. 1997), *abrogated by*
   *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) ..10, 15

*Elustra v. Mineo*, 595 F.3d 699 (7th Cir. 2010) ...................................................11, 23

*Gallo v. United States*, 331 F. Supp. 2d 446 (E.D. Va. 2004) ....................... 15, 17, 23

*Gardner by Gardner v. Parson*, 874 F.2d 131 (3d Cir. 1989) .....................................13

*Harris v. Apfel*, 209 F.3d 413 (5th Cir. 2000)..............................................10, 11, 22

*Iannaccone v. Law*, 142 F.3d 553 (2d Cir. 1998) ......................................................15

*In re Gault*, 387 U.S. 1 (1967) ...................................................................................18

*Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997)...........................10, 16

*Johnson v. Lufkin Daily News,* 48 F. App'x 917 (5th Cir. 2002) ..............................10

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996).......................................................................18

*Machadio v. Apfel,* 276 F.3d 103 (2d Cir. 2002)...................................................... 22

*Maldonado ex rel. Maldonado v. Apfel*, 55 F. Supp. 2d 296 (S.D.N.Y. 1999) ............. 22

*Martin v. City of Alexandria*, 198 F. App'x 344 (5th Cir. 2006) ............................... 14

*Meeker v. Kercher*, 782 F.2d 153 (10th Cir. 1986) .................................................... 13

*Morgan v. Texas,* 251 F. App'x 894 (5th Cir. 2007) .................................................. 10

*Myers v. Loudoun Cnty. Pub. Sch.,* 418 F.3d 395 (4th Cir. 2005) ............................. 10

*Navin v. Park Ridge Sch. Dist.*, 270 F.3d 1147 (7th Cir. 2001) ................................. 10

*O'Reilly v. N.Y. Times Co.,* 692 F.2d 863 (2d Cir. 1982) .......................................... 23

*Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876 (3d Cir. 1991) ................................. 10

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) .......................................................... 20

*Shepherd v. Wellman*, 313 F.3d 963 (6th Cir. 2002) .................................................. 10

*Smith ex rel. Smith v. Smith*, 49 F. App'x 618 (7th Cir. 2002) .................................. 16

*Sprague v. Dep't of Fam. & Protective Servs.*,
    547 F. App'x 507 (5th Cir. 2013) (per curiam) ..................................................... 10

*Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281 (2d Cir. 2005) ................... 11, 12, 23

*Troxel v. Granville*, 530 U.S. 57 (2000) ..................................................................... 19

*Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516 (2007) ....................................... 11

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) .................................................................. 20

**Statutes**

28 U.S.C. § 1654 .................................................................................................. 13, 15

**Rules**

Fed. R. Civ. P. 17(c) ............................................................................................... 13

**Other Authorities**

Emily A. Shrider et al., U.S. Census Bureau, P60-273, Income and
    Poverty in the United States: 2020, at 16 (2021) .............................. 16

## Identity & Interest of Amicus Curiae[1]

On June 28, 2022, the Court appointed the undersigned as amicus curiae to file a brief in support of Appellant and address the following question: "Outside of the social security context, may non-attorney parents assert claims on behalf of their minor children while proceeding pro se in federal court?"

---

[1] No party or party's counsel authored this brief in whole or in part or contributed funding intended for preparing or submitting it. No person other than court-appointed amicus curiae contributed money to fund the preparation or submission of this brief.

## Introduction

On the merits, this case raises legitimate concerns about how much the government may interfere with the bodily autonomy of some of its least powerful citizens: schoolchildren. Because the government forces them to attend school, and most attend public schools, children are directly subject to government control and policy more than almost any other group. Even so, in something of an odd twist, these citizens most affected by government policy have virtually no say in formulating or implementing it. Schoolchildren therefore rely on their parents or guardians to protect their constitutional and statutory rights vis-à-vis government policy.

That's what happened here. On behalf of her schoolchildren, Appellant Allyson Raskin sued Appellee Dallas ISD related to its Covid-19 mask mandate. Mrs. Raskin and her children raised sincere concerns about the potential health effects of mandatory masking and whether Dallas ISD could force its students to mask. Regardless of one's views on that issue, there's no doubt that government rules limiting a citizen's bodily autonomy—like mandatory masking—raise questions of constitutional significance.

Yet the district court never even considered the merits. Instead, the district court disposed of the case on Article III standing grounds because Mrs. Raskin tried to vindicate her children's rights pro se, rather than through an attorney. If Mrs.

Raskin had hired an attorney, and that attorney had filed the very same claims, the outcome would have been different. In that case, the district court would have assuredly addressed the merits of the claims, issued a scheduling order, permitted the parties to exchange discovery, and so on.

That disparity is untenable and stems from a mechanical application of the general rule that parents may not bring claims on behalf of their minor children pro se in federal court. The rule is supposed to protect the rights of minors, but its inflexible application is unnecessary and harmful. It is unnecessary because federal courts have plenty of ways to protect minor litigants without dismissing their claims outright. It is harmful because it creates two classes of children: (1) those whose families have the means to hire an attorney to vindicate their rights and (2) those whose families do not and whose rights the government can thus trample.

Here, the district court dismissed Mrs. Raskin's case without making any findings *other than* that Mrs. Raskin was bringing her children's claims pro se. It did not determine whether counsel was available, affordable, or necessary. That makes little sense. The district court should have considered whether outright dismissal was in the best interest of Mrs. Raskin's children before disposing of the case. By not doing so, the district court abdicated its obligations to protect Mrs. Raskin's minor children, and this Court should reverse.

## Argument

The Court should reverse the district court's procedural dismissal and remand for the district court to consider the merits of the suit relative to the best interests of Mrs. Raskin's minor children.

**A.  Non-attorney parents usually cannot assert claims on behalf of their minor children while proceeding pro se, but federal courts have developed equitable exceptions.**

To directly answer the Court's question, federal courts typically hold that a "non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Harris v. Apfel*, 209 F.3d 413, 414–17 (5th Cir. 2000); *Sprague v. Dep't of Fam. & Protective Servs.*, 547 F. App'x 507, 507-08 (5th Cir. 2013) (per curiam); *Myers v. Loudoun Cnty. Pub. Sch.,* 418 F.3d 395, 401 (4th Cir. 2005) (collecting cases).[2, 3] Here, the district court reflexively applied this "counsel mandate"—as Mrs. Raskin terms it—and avoided the merits of Mrs. Raskin's challenge to Dallas

---

[2] Those cases include *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Navin v. Park Ridge Sch. Dist.*, 270 F.3d 1147, 1149 (7th Cir. 2001); *Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 581 (11th Cir. 1997), *abrogated by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997); and *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882–83 (3d Cir. 1991).

[3] Other Fifth Circuit cases include *Johnson v. Lufkin Daily News,* 48 F. App'x 917 (5th Cir. 2002); *Morgan v. Texas,* 251 F. App'x 894, 896 n.2 (5th Cir. 2007); *Aduddle v. Body,* 277 F. App'x 459 (5th Cir. 2008); and *Chatman v. Mississippi High Sch. Athletics Ass'n*, 552 F. App'x 335, 337 (5th Cir. 2014).

ISD's mask mandate entirely. Dallas ISD would have this Court believe that's where the analysis *must* end. But that isn't so.[4]

Contrary to Dallas ISD's briefing, the counsel mandate "is not quite as absolute as it may seem" and "should be applied gingerly." *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 285 (2d Cir. 2005). That's because federal courts have increasingly recognized the unintended, but very real, detrimental effects the mandate can have on children's claims. So to dampen the counsel mandate's worst effects, federal courts have crafted exceptions.

For one, many circuits—including this one—permit pro se parents to bring suit on behalf of minor children to secure social security benefits. *See, e.g.*, *Harris,* 209 F.3d at 417. For another, courts sometimes disregard the counsel mandate when it would deprive minor children of a claim altogether. *See, e.g.*, *Elustra v. Mineo*, 595 F.3d 699 (7th Cir. 2010). Underlying both exceptions is a recognition that the counsel mandate is an equitable "rule" stemming from the federal courts' desire to protect minors' interests. *Tindall*, 414 F.3d at 285. But in some cases, rigidly applying the

---

[4] The Supreme Court has not weighed in on the counsel mandate. *See, e.g.*, *Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 535 (2007) (explicitly not reaching whether parents may litigate claims on behalf of their children pro se under the Individuals with Disabilities Education Act (IDEA)).

counsel mandate "**undermine[s]** a child's interest in having claims pursued for him or her when counsel is as a practical matter unavailable." *Id.* (emphasis added).

This is one of those cases.

Faced with allegations that Dallas ISD's mask mandate infringes the rights of Mrs. Raskin's children and potentially causes more harm than good, the district court ducked the merits of the case. Instead, it dismissed the claims Mrs. Raskin asserted on behalf of her children for lack of standing. ROA.316. The district court made no findings related to Dallas ISD's mask mandate. Nor did it make any findings related to whether Mrs. Raskin was reasonably competent to present the claims, whether the claims were facially sound, whether Mrs. Raskin could afford or needed to pay for an attorney, or anything else. ROA.316–324. At most, the district court "found" that Mrs. Raskin was unrepresented by counsel, and it dismissed the case. ROA.325.

Now imagine an attorney had filed the **same** complaint for Mrs. Raskin on behalf of her children. Whatever else may have happened, the district court would **not** have dismissed the case on Article III standing grounds because the presence of the attorney would have (somewhat strangely) "cured" the lack of standing. The district court would have then at least *considered* the merits of Dallas ISD's arguments in favor of masking its students. This disparity might be tolerable if a

statute or ruled required the counsel mandate. But none does.[5] On the contrary, the counsel mandate is unnecessary and usurps the flexibility of district courts to protect minors under Rule 17(c). *See* Fed. R. Civ. P. 17(c).

**B.    When inflexibly applied, the counsel mandate contravenes Rule 17(c).**

An unbending application of the counsel mandate ignores the latitude granted district courts under Rule 17(c) to protect the rights of child litigants. As the Third Circuit put it, the "purpose of Rule 17(c) is to further the child's interest in prosecuting or defending a lawsuit, or at least to allow an evaluation of the merits of the suit relative to the child's best interests." *Gardner by Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir. 1989). It is hard to square that purpose—or the rule's plain language—with a broad, automatically applied counsel mandate. And while Rule 17(c) gives federal courts considerable leeway in *how best* to protect child litigants, it still says they **must** do so. Fed. R. Civ. P. 17(c) ("The court *must* appoint a guardian ad litem—*or issue another appropriate order*—to protect a minor or incompetent person who is unrepresented in an action.") (emphasis added).

---

[5] Most commonly, federal courts cite Rule 17(c) and 28 U.S.C. § 1654 (the Judiciary Act) as authority for the counsel mandate. *See, e.g.*, *Meeker v. Kercher*, 782 F.2d 153 (10th Cir. 1986) (first case to apply the counsel mandate). Those citations are odd because Rule 17(c) says nothing about lawyers, and § 1654 says nothing about children.

Take this case. Nothing in the record reflects that the district court determined—or even considered—what is in the best interest of Mrs. Raskin's children. Not only did the district court not evaluate "the merits of the suit relative to the child's best interest," it never evaluated the merits *at all*. The district court made no determinations other than that (1) Mrs. Raskin asserted claims on behalf of her children and (2) an attorney did not represent her. It then dismissed the claims based on the counsel mandate. The record does not suggest that the district court even contemplated whether dismissing their claims was in the best interest of Mrs. Raskin's children.

At bottom, the district court failed to address whether Mrs. Raskin's pro se appearance on behalf of her children is the best choice to protect their claims related to Dallas ISD's mask mandate. That failure is unsurprising, even understandable, given the counsel mandate's murky exceptions. But the counsel mandate is no justification for the district court to ignore its obligations under Rule 17(c).

## C.    A rigid counsel mandate is unnecessary to protect children and courts from the unauthorized practice of law.

Setting aside the conflict between the counsel mandate and Rule 17(c), federal courts often justify the counsel mandate, in part, under their inherent powers to prohibit the unauthorized practice of law. After all, courts seldom permit nonlawyers to act as someone else's counsel. *Martin v. City of Alexandria*, 198 F. App'x 344, 346

(5th Cir. 2006) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)). Because nonlawyer parents represent their children's interests, not their own, courts have held that parents engage in the unauthorized practice of law by advancing their children's claims without counsel. *See, e.g.*, *Cheung*, 906 F.2d at 61.

Standing alone, courts' concerns about the unauthorized practice of law by pro se parents are not unreasonable. Some pro se parents may abuse the judicial process or engage in unscrupulous conduct using their children's claims. *See Cheung*, 906 F.2d at 61. And nonlawyer parents' lack of legal expertise could jeopardize their children's claims while imposing additional burdens on the courts. *See Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997); *see also Gallo v. United States*, 331 F. Supp. 2d 446, 447 (E.D. Va. 2004). But these concerns are little different from the challenges courts face when any party appears pro se. Yet parties appear pro se in federal court all the time. Indeed, that's their *right*. *See* 28 U.S.C. § 1654 (providing litigants with a statutory right to act as their own counsel). So these concerns, while understandable, cannot support an unshakable counsel mandate.

Still, courts—like the district court here—seem to assume that by dismissing the child's case without prejudice, they can avoid the potential problems associated with parents bringing claims pro se while still protecting children. In that way, theoretically, the child could assert the claim personally upon reaching adulthood.

*See Smith ex rel. Smith v. Smith*, 49 F. App'x 618, 620 (7th Cir. 2002); *Johns v. Cty. of San Diego*, 114 F.3d 874, 877–78 (9th Cir. 1997).

But that isn't always true. In this case, for instance, the district court's dismissal effectively ends the children's challenges to Dallas ISD's mask mandate. Unless they turn 18 during the next school year (they won't), they are forced to continue masking. And by the time they can personally challenge the mask mandate, Dallas ISD will (presumably) no longer have it. So as a practical matter, dismissal without prejudice does not protect the children's claims; it just deprives them of a remedy to challenge government policies that genuinely affect their lives and bodily autonomy ***now***—not when they're 18.

## D.    An unyielding counsel mandate can infringe the constitutional rights of both parents and children.

Even more problematic, when rigidly applied—like in this case and many others—the counsel mandate interferes with the rights granted families and excludes vulnerable citizens from federal courts.

### 1.    The counsel mandate can exclude families with limited financial resources—and those with mostly non-monetary claims—from federal court.

First, the counsel mandate excludes children from court if their families are indigent or of limited financial means. Nearly one in five children—or about 12 million minors—live in poverty. Emily A. Shrider et al., U.S. Census Bureau,

P60-273, Income and Poverty in the United States: 2020, at 16 (2021).[6] For these children and families living in poverty, hiring an attorney may not be possible as a practical matter. Thus, the counsel mandate excludes them from the court system altogether.

But that's only part of the story. Even for families who *can* afford an attorney, the quality of legal representation they can afford may vary considerably. Some cases—like this one—offer far less financial incentive to attorneys than, say, a personal-injury case. That financial incentive is further reduced when there is no right to recover attorneys' fees. In some cases, then, the pool of high-quality attorneys a parent can afford on an hourly basis may be limited.

As a result, the counsel mandate can effectively deny entire classes of children the ability to access the courts or obtain a legal remedy. In this case, for instance, the district court's application of the counsel mandate would likely prevent Mrs. Raskin's children from *ever* challenging the mask mandate. In some other cases, a child's claim may not survive to adulthood because not all statutes of limitation toll during childhood. *See, e.g.*, *Gallo*, 331 F. Supp. 2d at 448 (causes of action under the Federal Tort Claims Act do not toll during childhood). But even when a claim

---

[6] Available at: https://www.census.gov/conten/dam/Census/library/publications/2021/demo/p60-273.pdf (last accessed August 5, 2022).

survives until adulthood, the calendar turning from age 17 to 18 likely does little to change the child's economic circumstances. And if they cannot hire an attorney when they turn 18, they are likely in no better position to assert their claims than their parents were.

### 2. The counsel mandate infringes the constitutional rights of minors.

What's more, precluding children from court access raises constitutional concerns. The Constitution generally guarantees children the same fundamental rights as adults and constrains the government from acting in particular ways towards children and adults. *See Bellotti v. Baird*, 443 U.S. 622, 633 (1979) (plurality opinion) ("A child, merely on account of his minority, is not beyond the protection of the Constitution."); *see also In re Gault*, 387 U.S. 1, 13 (1967) ("[W]hatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."). Essential here is the right of access to the courts, which implicates the right to petition under the First Amendment and due process and equal protection concerns under the Fifth and Fourteenth Amendments. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996) ("We observe first that the Court's decisions concerning access to judicial processes … reflect both equal protection and due process concerns.").

The Court need not resolve the precise contours of these rights vis-à-vis minor children here. For our purposes, it's enough to note that the right to sue and defend in the courts "is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship …." *Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907). For its part, the counsel mandate places that "most essential privilege" out of reach for many of this Nation's most vulnerable citizens. Worse, it places that privilege out of reach mainly for those who cannot afford an attorney, creating constitutional haves and have-nots based on little more than family financials.

### 3.     The counsel mandate can interfere with liberty interests granted to parents and families.

Similarly, the counsel mandate undermines the constitutional protections granted to parental decision-making.

The Due Process Clause conveys to parents the fundamental liberty interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court identified this liberty interest as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as "of basic importance in our society." *Boddie v. Connecticut,* 401 U.S. 371, 376 (1971).

These liberty interests are essential. For one, permitting parents to raise their children as they see fit serves children's interests because those who care most about them and know them best are in the best position to make important decisions on their behalf. For another, protecting parental freedom encourages parents to impart their moral values and diverse viewpoints to their children and prepare them to be responsible citizens in our Republic. *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972) (Parents have "[t]he duty to prepare the child for 'additional obligations,'" including "the inculcation of moral standards, religious beliefs, and elements of good citizenship.") (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)).

The counsel mandate ignores these fundamental rights and pigeonholes parents as unlicensed legal practitioners rather than as caregivers seeking to protect their children's interests. But there's little reason to bar parents from bringing their children's claims pro se in the interest of preventing the unauthorized practice of law. After all, permitting a child's closest caregiver to protect the child's interests in court—even imperfectly—presents little risk to the legal system. And giving parents that right would not, for instance, imply that pro se parents could represent *someone else's* child or a putative class of children—the implications of which would present different matters altogether.

4. **The counsel mandate can create an undue hardship for families with unpopular or minority views.**

Additionally, reserving to parents the choice of whether to retain counsel serves the broader societal interests in cultivating diversity of thought. Curtailing the counsel mandate would ensure that parents from all income levels and all viewpoints can advance their children's claims. Even setting aside financial considerations, some causes—perhaps even the one advocated by Mrs. Raskin—are unpopular or unwelcome. That could make it tougher to retain an attorney. But that difficulty shouldn't preclude Mrs. Raskin or other parents and their children from expressing their viewpoints and litigating their rights. The courts are not—and should not be—reserved only for those with popular, dominant views.

E. **Under Rule 17(c), courts should consider case-by-case whether (and how) to apply the counsel mandate.**

The most obvious answer to the hardships wrought by the ham-fisted application of the counsel mandate is to determine the best interests of child litigants case-by-case, as Rule 17(c) requires. This is not a tall task, and the Court has done it before.

When faced in social security cases with the same inequities discussed above, the Court fashioned "exceptions" to enable parents to bring those cases on behalf of their children pro se. The justifications for those exceptions are instructive here. *See*

*Harris*, 209 F.3d at 416; *see also Machadio v. Apfel,* 276 F.3d 103, 107 (2d Cir. 2002) (allowing nonlawyer parents to represent minor children in social security appeals if the parent has an adequate interest in the case and meets basic standards of competence).

> **1.    The equitable exceptions courts apply in social security cases are an excellent guide for all cases.**

This Court (and others) focus on several factors to carve out the social-security exception to the counsel mandate:

- Parents have personal interests that are united with those of their children (e.g., the interest in securing financial support to pay for the child's care). *See Machadio*, 276 F.3d at 106; *Harris*, 209 F.3d at 416.

-  The litigation impacts the interests of no one other than the parent and child plaintiff. *See Machadio*, 276 F.3d at 106.

- The parent and child necessarily are living in poverty, and children's rights to the benefits "must be vindicated in a timely manner," as "child [social security] benefits are intended to aid disabled children while they are children." *Maldonado ex rel. Maldonado v. Apfel*, 55 F. Supp. 2d 296, 303 (S.D.N.Y. 1999).

- Imposing the counsel mandate in social security appeals cases would "destroy" the child's statutory right to judicial review, both because of the challenges of timeliness and poverty and because of the shortage of available counsel. *Id*. at 303 & 306.

Those factors, of course, aren't limited to social security cases and appear in many other types of cases brought by parents pro se. As a result, federal courts have recognized other, non-social security cases in which enforcing the counsel mandate

would be inequitable.[7] Take *Elustra v. Mineo*. In that case, a pro se parent filed a motion on behalf of her minor child to set aside a judgment. 595 F.3d at 706–07. On appeal, one question was whether the motion was valid because it was filed pro se. *Id*. The Seventh Circuit held that the filing was valid and timely—permitting the minor's appeal to continue—because, in part, the time for filing had passed, meaning dismissing the motion would deny the child the opportunity to move to set aside the judgment altogether. *Id*. Put simply, the *Elustra* court recognized that, if applied automatically, the counsel mandate would lead to the inequitable (and ironic) result of discarding the minor's claim in the name of protecting the minor.

These exceptions are unsurprising—and necessary—because the inability of minors to pursue claims without the assistance of counsel is in "some tension with the general notion that a person may appear in court without the benefit (or expense) of professional assistance." *Tindall*, 414 F.3d at 286 (citing *O'Reilly v. N.Y. Times Co.,* 692 F.2d 863, 867 (2d Cir. 1982) (noting that the right to self-representation is one of "high standing," with deep historical roots, reflecting values of freedom and self-reliance)).

---

[7] *See, e.g.*, *Gallo*, 331 F. Supp. 2d at 448–49 ("The rule against allowing pro se parents to litigate on behalf of minors is aimed at protecting the rights of children. It would be a perverse result to rest dismissal of [the child's] claim on this ground, thereby preventing her from ever litigating her claim, as she is clearly the person the rule means to protect.") (internal quotations and citations omitted).

**2.    The Court should empower district courts to consider the need for counsel based on the unique circumstances of each case.**

To address these issues, the Court need not abandon the counsel mandate wholesale (though it would be well within its right to do so). Instead, the Court should encourage district courts to employ the flexibility in Rule 17(c)'s plain language. To that end, district courts would consider each case's particular circumstances to determine whether counsel is necessary.

*First*, district courts could consider the reasons the parent is suing pro se (e.g., limited financial means, difficulty retaining counsel, strongly held family beliefs, and the like). Knowing *why* the parent is bringing the minor child's claims pro se—and developing a record of those reasons—would permit the district court to make an informed decision about the need for counsel and whether dismissal without prejudice would *truly* better protect the child's claims. A record would also permit this Court to meaningfully review the district court's reasoning.

*Second*, district courts could evaluate the complexity of the case. Those cases requiring significant fact development, posing novel issues of law, or demanding the presentation of substantial evidence at trial would more likely benefit from counsel, and the district court could require (or appoint) counsel. For more straightforward cases, or those the district court could decide on the papers, counsel may be unnecessary. Even in more complicated matters, the district court could refer the

case to a magistrate for discovery and factfinding rather than require pro se parents to obtain counsel or face dismissal.

*Third*, district courts could prioritize cases involving fundamental rights, constitutional deprivations, or claims unlikely to survive until adulthood. This would ensure that district courts consider cases like this on the merits, even at the motion-to-dismiss stage. That alone would provide a basic level of judicial oversight for Mrs. Raskin's schoolchildren and others like them.

*Fourth*, district courts would retain the ability to protect the judiciary from any concerns about the unauthorized practice of law by dismissing frivolous, abusive, or meritless claims. And if the district court determines the pro se parent does not meet the basic standards of competence necessary to present their child's specific claims, the district court could require counsel or dismiss the claims to help protect the child's interests.

Whether the Court uses these factors or others, its task is straightforward: empower district courts to seize on the flexibility in Rule 17(c) to protect the claims of minor schoolchildren. By doing so, the Court will greatly serve those who are otherwise effectively barred from federal courts.

## CONCLUSION & PRAYER

The undersigned urges the Court to reconsider an unbending application of the counsel mandate, reverse the district court's Article III standing dismissal, and remand for the district court to consider the merits of the suit relative to the best interests of Mrs. Raskin's children.

Dated: August 8, 2022.

Respectfully submitted,

*/s/ Cody W. Stafford*

Cody W. Stafford
DOBROWSKI STAFFORD LLP
4601 Washington Avenue, Suite 300
Houston, Texas 77007
(713) 659-2900
cstafford@doblaw.com

*Court-Appointed Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2022, a true and correct copy of the foregoing document was served via the Court's Appellate CM/ECF system on all counsel of record.

*/s/ Cody W. Stafford*

Cody W. Stafford
*Counsel of Record*

## CERTIFICATE OF COMPLIANCE

This brief complies with the (1) type-volume limitation of FED. R. APP. P. 29(d) because it contains a total of 4,494 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii); and (2) typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) and FIFTH CIR. R. 32.1 because it has been prepared in a proportionally spaced typeface using 14-point font with 13-point font in the footnotes.

*/s/ Cody W. Stafford*
Cody W. Stafford
*Counsel of Record*