No. 21–11180

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Allyson Raskin, on behalf of her minor children JD1 and JD2,

*Plaintiff-Appellant,*

*v.*

Dallas Independent School District; Dallas Independent School District
Board of Trustees; Michael Hinojosa, Superintendent of the Dallas
Independent School District in his individual capacity and in his official
capacity as Superintendent of the Dallas Independent School District;
Ben Mackey, President; Edwin Flores, 1st Vice President; Maxie
Johnson, 2nd Vice President; Joe Carreon, Board Secretary; Dustin
Marshall; Dan Micciche; Karla Garcia; Joyce Foreman; Justin Henry,
all in their Individual Capacities and in their Capacities as Members of
the Dallas Indpendent School District Board of Trustees,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Civil Action No. 3:21-cv-2429-L

**UNOPPOSED MOTION TO TAKE JUDICIAL NOTICE**

Kathryn E. Long
State Bar No. 24041679
klong@thompsonhorton.com

Carlos G. Lopez
State Bar No. 12562953
clopez@thompsonhorton.com

K. Adam Rothey
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 N. Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

*Attorneys for Defendants-Appellees Dallas Independent School District, Dallas Independent School District Board of Trustees, Michael Hinojosa, Ben Mackey, Edwin Flores, Maxie Johnson, Joe Carreon, Dustin Marshall, Dan Micciche, Karla Garcia, Joyce Foreman, and Justin Henry*

Appellees move the Court to take judicial notice of, and to consider in this appeal, the attached *Parents for Medical Choice Plea in Intervention, Application for Temporary Restraining Order, and Application for Writ of Temporary Injunction* (the "Plea in Intervention") filed by Appellant Allyson Raskin through counsel in a lawsuit entitled *Koch v. Jenkins, et al.*, Cause No. DC-21-10101, in the 116th Judicial District Court, Dallas County, Texas. The Plea in Intervention is relevant to this appeal, and specifically to the brief of amicus counsel and Dallas ISD's Supplemental Brief in response, because it tends to disprove the amicus brief's suggestions that counsel was "as a practical matter unavailable" to Raskin, that "application of the counsel mandate would likely prevent Mrs. Raskin's children from ever challenging the mask mandate," and that Raskin perhaps had difficulty retaining an attorney because her "cause[ ]" was "unpopular or unwelcome." Amicus Br. at 12, 17, 21. More specifically, it demonstrates that Raskin and her children were represented by counsel in a separate, but similar state court lawsuit against Dallas ISD regarding its then-existing mask mandate filed mere weeks before she filed her complaint pro se in the instant lawsuit. *See* Plea in Intervention at 3–4 (identifying "Ally Raskin" as an Intervenor),

26 (identifying Raskin's counsel), and Exhibit 12, thereto (declaration of Allyson Raskin).

The Court may take judicial notice of the proffered Plea in Intervention. *Siplast, Inc. v. Emps. Mut. Cas. Co.*, 23 F.4th 486, 493 n.2 (5th Cir. 2022) (taking judicial notice of relevant third-party complaint); *Lake Eugenie Land & Dev., Inc. v. Halliburton Energy Servs. (In re Deepwater Horizon)*, 934 F.3d 434, 440 (5th Cir. 2019) ("We may take judicial notice of prior court proceedings as matters of public record."); *see also Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (court may judicially notice prior court documents to establish the fact of previous litigation and related filings). Counsel for Appellees have not unreasonably delayed in bringing this motion because the relevance of the proffered Plea in Intervention was first raised by arguments contained in the amicus brief, and this motion is filed in conjunction with Appellees' Supplemental Brief responding thereto. Counsel for Appellees have conferred with Raskin, who is appearing pro se, and she does not oppose the motion. Counsel for Appellees have also conferred with Court-appointed amicus counsel, and he does not oppose the motion.

Respectfully submitted,

*/s/   Kathryn E. Long*
KATHRYN E. LONG
State Bar No. 24041679
klong@thompsonhorton.com

CARLOS G. LOPEZ
State Bar No. 12562953
clopez@thompsonhorton.com

K. ADAM ROTHEY
State Bar No. 24051274
arothey@thompsonhorton.com

**THOMPSON & HORTON LLP**
500 N. Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

*Attorneys for Defendants-Appellees Dallas Independent School District, Dallas Independent School District Board of Trustees, Michael Hinojosa, Ben Mackey, Edwin Flores, Maxie Johnson, Joe Carreon, Dustin Marshall, Dan Micciche, Karla Garcia, Joyce Foreman, and Justin Henry*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on this 9th day of September 2022, via the Court's electronic filing and service system, as follows:

Mrs. Allyson Raskin
5533 Meletio Lane
Dallas, Texas 75230
essentiallyally@gmail.com

Cody W. Stafford
Dobrowski Stafford LLP
4601 Washington Ave., Suite 300
Houston, Texas 77007
cstafford@doblaw.com

*s/Kathryn Elizabeth Long*
Kathryn Elizabeth Long
*Attorney for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

1.    This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because, excluding the accompanying documents exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this document contains 366 words.

2.    This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point font named Century Schoolbook.

Dated: September 9, 2022

*s/Kathryn Elizabeth Long*
Kathryn Elizabeth Long
*Attorney for Defendants-Appellees*

FILED
8/23/2021 6:09 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
JAVIER HERNANDEZ DEPUTY

## CAUSE NO. DC-21-10101

| | | |
|---|---|---|
| **J.J. KOCH,** *Plaintiff,* | § § § | **DISTRICT COURT** |
| v. | § § | |
| **CLAY JENKINS, in his official capacity,** *Defendant,* | § § § | |
| and | § | |
| **O.D., through LISA DURR; E.T. and C.T., through KATHERIN THACKER; G.M.H. and G.R.M.H., through LAURA and DEANNA MCFERRIN-HOGAN; D.R. and G.R., through STARLET RAMIREZ; A.A., through SASHA ALVARADO; I.S. and I.M.S., through MEREDITH BARR; E.G., through MELISSA GRIFFITH; N.D., through DONNA DISTEFANO** *Pro-Mask Intervenors,* | § § § § § § § § § § § § | **116th DISTRICT** |
| v. | § | |
| **GREG ABBOTT, as Gov. of State of Texas,** *Counter-Defendant,* **STATE OF TEXAS,** *Intervenor-Plaintiff and Counter-Defendant.* | § § § § § § | **DALLAS COUNTY, TEXAS** |
| and | § | |
| **PARENTS FOR MEDICAL CHOICE, TOM GOODALE, for himself and K.G. and C.G. ALLY RASKIN for herself and JD1 and JD2,** *Medical Choice Intervenors.* | § § § § | |
| v. | § | |
| **RICHARDSON IND'T SCHOOL DIST., DALLAS IND'T SCHOOL DIST.,** all their board members in their official capacity, *Cross-Defendants* | § § § § § | |

### PARENTS FOR MEDICAL CHOICE
### PLEA IN INTERVENTION,
### APPLICATION FOR TEMPORARY RESTRAINING ORDER, and
### APPLICATION FOR WRIT OF TEMPORARY INJUNCTION

COMES NOW Intervenors PARENTS FOR MEDICAL CHOICE, an unincorporated association of parents of children in the Dallas and Richardson independent school systems, seeking restraint of and enjoin: 1) Cross-Defendant Clay Jenkins and his illegal masking edicts; and 2) Cross-Defendant school districts who have joined Jenkins in his usurpation of the Governor's authority, adopting policies in violation of the Open Meetings Act.

Intervenors base their request for immediate restraint and injunctive relief on the irreparable damage caused by the school districts' actions, which include bullying, segregation, and denial of public education to unmasked students.

Intervenors herein seek removal of Jenkins and the school trustees of the named school boards from his position based on incompetency and official misconduct under section 87.013 of the Texas Local Gov't Code and section 24, art. V of the Texas Constitution. School trustees cannot dodge responsibility by delegating everything to superintendents; such trustees should be replaced by those who recognize their job is to be more than mere cheerleaders for administrators.

## I.    DISCOVERY PLAN

1.    Plaintiffs intend to conduct discovery under Level 3 of Rule 190.

## II.    RULE 47 STATEMENT OF RELIEF

2.    The remedy sought herein is within the jurisdictional limits of the Court. Plaintiffs seek non-monetary relief and all other relief to which they may show themselves entitled.

## III.    PARTIES

3.    Plaintiff Justin "J.J." Koch resides in Dallas County serving as Comm'r of District Two of Dallas County and can be reached through the undersigned.

4.    Intervenor-Plaintiff the State of Texas is represented by Ken Paxton, the Attorney General of Texas, and can be served at the Office of the Attorney General, General Litigation Division P.O. Box 12548, Capitol Station Austin, Texas 78711-2548.

5.    Defendant Clay Jenkins is a resident of Dallas County and is the elected Dallas County Judge in Dallas County, Texas. He can be served at 411 Elm St., 1st Floor, Suite 127, Dallas, Texas 75202, or wherever he may be found.

6.    Counter-Defendant Greg Abbott, as Governor, is represented by Ken Paxton, the Attorney General of Texas, and has filed an intervention in this case.

7.    Intervenor-Plaintiff PARENTS FOR MEDICAL CHOICE ("Parents") is an unincorporated association of parents who generally reside in school districts either

in Dallas County or impacted by actions taken by Defendant Jenkins. Representing

Parents for Medical Choice are four named members, each of which have standing

to sue the school and also represent at least one minor child residing in the named

independent school district ("ISD"):

    a. TOM GOODALE lives in Richardson ISD and sues for himself and K.G.
       and C.G.

    b. ALLY RASKIN resides in Dallas ISD, and sues for herself and J.D.

8.    Cross-Defendant Richardson ISD can be served through its superintendent,

Jeannie Stone, at 400 S. Greenville Ave., Richardson, TX 75081.

9.    Cross-Defendant Dallas ISD can be served through its superintendent,

Michael Hinojosa, at 9400 N. Central Expressway Dallas, TX 75231.

### IV.   VENUE, JURISDICTION, WAIVER, AUTHORITIES

10.    District Courts in Texas have exclusive, appellate, and original jurisdiction

of all actions, proceedings, and remedies, except in cases where exclusive,

appellate, or original jurisdiction may be conferred by this Constitution or other

law on some other court, tribunal, or administrative body. Tex. Const. Art. V, § 8.

11.    This Court has jurisdiction because the Declaratory Judgment Act waives

governmental immunity regarding challenges to validity of government actions.

TEX. CIV. PRAC. & REM. CODE §§ 37.004, .006; *Texas Lottery Comm. v. First State*

*Bank of DeQueen*, 325 S.W.3d 628 (2010).

12.    Based on the power given to him by the Disaster Act of 1975, Governor Abbott issued Executive Order GA-38[1] on July 29, 2021, which has the effect of law and prohibits governmental entities, public health authorities, and officials from requiring face coverings, other than in hospitals and jails.

13.    The Texas Open Meetings Act waives the immunity of government officials and government agencies. See Texas Gov't Code §§ 551.001, *et seq.* "Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." § 551.002.

14.    Venue is proper in Dallas County as the suit arises out of the actions taken by Defendant Jenkins in Dallas County.

## V.    FACTS

A. The County Judge of Dallas County is required to follow GA-38.

15.    Commissioners' courts are the principal governing body of a county. The powers and duties of the commissioners include aspects of legislative, executive, administrative, and judicial functions. In the exercise of its powers and jurisdiction over county business, the commissioners have implied authority to exercise broad discretion to accomplish the purposes intended. *In re El Paso Cty. Comm'rs Court*, 281 S.W.3d 16, 19 (Tex. App. 2005).

16.    Defendant Clay Jenkins is the elected County Judge of Dallas County, which

---

[1] Gov. Abbott's GA-38 is attached to the Original Petition of J.J. Koch as an exhibit.

is not a jail or hospital facility, and is therefore not exempted from GA-38, which prohibits any governmental entity, public health authority, and official from requiring face coverings, other than in hospitals and jails.

17.     Beyond Governor Abbott's executive order, no superior legal authority has issued, voted, or acted in any way to create a rule, law, or authority to require any person to wear face coverings. As stated elsewhere, a Texas governor's executive orders based on the Texas Disaster Act have the force and effect of law.

18.     Jenkins leans upon the local declaration of disaster from March 12, 2020, which was part of the state-wide effort to combat COVID-19. At no time has the state-wide declaration of the pandemic been eliminated, and Jenkins, as part of the Governor's cadre of local officials, has no authority to act independently, though he has asserted such in his recent order issued on August 16, 2021, which is already part of the Court's documentation. (Counter-Plaintiff's Trial Exhibits, Exhibits 3, 4, filed August 23, 2021.)

19.     This Court issued a restraining order ("TRO") in this case on August 10, 2021, in support of Jenkins's request. The TRO purports to control all of Texas, however, the Supreme Court stayed that order.

20.     At the very least, this Court ought not assert any injunction on this matter when no evidence has been provided that warrants a state-wide restraining order regarding Gov. Abbott's GA-38.

B. <u>Dallas County area ISDs have joined with Jenkins insurrection, bullying and denying an education and causing irreparable damage.</u>

21.    The defendant school districts have required face coverings of students, and mistreated students who have not chosen to wear a face covering, though the CDC's best study on the matter shows that such use reduces virus spread less than 2% after 100 days of use.[2]

    *i.    Cross-Defendant Richardson ISD is violating GA-38 and TOMA.*

22.    Richardson ISD publicly disseminates its "Blueprint, Richardson ISD's Back to School Plan" as though it is ISD policy. However, after a dutiful search of Richardson ISD meeting minutes, and noting that Richardson ISD has stated, "RISD has made a local decision to require masks," one can only assume that the Richardson ISD trustees have opted to simply allow its superintendent to do whatever she wishes, creating policy without board votes.

23.    Seeing that the Blueprint is ever-changing, the Richardson ISD Board of Trustees is not fulfilling their duties to occasionally vote on what some would say is the most important policy it is currently using. The Richardson ISD Blueprint constitutes an illegally implemented policy adopted in violation of TOMA.

---

[2] See CDC-cited study, https://www.cdc.gov/mmwr/volumes/70/wr/mm7010e3.htm; Guy GP Jr., Lee FC, Sunshine G, et al. Association of State-Issued Mask Mandates and Allowing On-Premises Restaurant Dining with County-Level COVID-19 Case and Death Growth Rates — United States, March 1–December 31, 2020; stating (parentheticals removed): "During March 1–December 31, 2020, state-issued mask mandates applied in 2,313 (73.6%) of the 3,142 U.S. counties. Mask mandates were associated with a 0.5 percentage point decrease in daily COVID-19 case growth rates 1–20 days after implementation and decreases of 1.1, 1.5, 1.7, and 1.8 percentage points 21–40, 41–60, 61–80, and 81–100 days, respectively, after implementation.... Daily case and death growth rates before implementation of mask mandates were not statistically different from the reference period."

24.     Additionally, the lackadaisical approach is causing irreparable damage now to its students. Richardson is requiring students running laps to wear masks. See Declaration of Hale, attached as Exhibit 1.

25.     Beyond requiring mask use during sporting events, the Declaration of Schmidt, attached as Exhibit 2 shows that the school is segregating children without masks, sending them to the school library to work without a teacher, as though they are contagious and damaging to other children merely because they are not wearing a mask. (As a reminder, the flu is twice as dangerous as COVID-19 to minors, and asymptomatic minors do not generally transmit COVID-19.)

26.     Some of these rules are clearly designed to punish students who have not adopted the irrational misunderstanding regarding the use of non-medical cloth face coverings. For example, students not wearing masks are punished by denying recess to the non-masked students (where they are not required to wear masks).
See Declaration of Phipps, attached as Exhibit 3.

These irrational rules have caused many medical issues, including dizziness, headaches, inability to focus, an increase in strep, and diminished school performance. See Declaration of McDonough, attached as Exhibit 4.

        *ii. Cross-Defendant Dallas ISD is violating GA-38 and TOMA.*

27.     Dallas Independent School District is a public school district serving primarily students in Dallas which started school on or about August 16, 2021.

28.     On July 29, 2021, Governor Greg Abbott ("Abbott") issued executive order GA-38 which included the prohibition, states "No governmental entity, including a county, city, school district, and public health authority, and no governmental official may require any person to wear a face covering or to mandate that another person wear a face covering [other than hospitals and jails]. Exhibit 10.

29.     GA-38 also specifically superseded any face-covering requirement imposed by any local government entity or official and made any such action illegal as a "failure to comply with" GA-38 and make individuals subject to a $100 fine.

30.     On August 9, 2021, the District, through its superintendent Dr. Michael Hinojosa, informed school district parents and students that masks would be required on school district property. The District's website states, "Effective Tuesday, August 10, to protect staff and students from the spread of the highly contagious Delta variant of the coronavirus, Dallas ISD is temporarily requiring all staff, students and visitors to wear masks when on district property."

31.     Dallas ISD adopted this mask mandate after Gov. Abbott issued GA-38; every competent superintendent knows that any mask policy does not meet the requirements of GA-38. Hinojosa admitted knowing that the mask policy did not comply with GA-38, but he claimed GA-38 did not apply to the District.

32.     Nothing provided by the District specifies what constitutes a face mask, leaving a reader without an understanding of what kind of material would suffice.

The requirement as worded is so vaguely that a mask made of table tennis netting would satisfy the DISD mask edict. However, such a mask requirement would clearly not be to any health advantage, either to the wearer or those around the wearer. Thus, Plaintiff believes that the District's requirement is not rational, but borne from a desire to please political forces.

33.     There is no evidence of a District's Board of Trustees vote to enforce a mask policy nor of a public hearing on the mask policy before announcing it. Superintendent Hinojosa appears to have unilaterally made the decision and issued it *ex cathedra*.

34.     The policy includes no exemptions based on religion, health, or conscience.

35.     Defendants' policy is shocking when one considers that the best currently available medical evidence indicates that children have not and continue not to play a role in the spread of COVID-19. When compared to influenza, children are less likely to be infected with COVID-19, less likely to be symptomatic if infected with COVID-19, and less likely to spread infection of COVID-19 than adults.[3]

36.     As the Center for Disease Control (CDC) stated, it does not appear that children are the primary spreaders of COVID-19 among family members. Research

---

[3] Itai Dattner et al., *The role of children in the spread of COVD-19: Using household data from Bnei Brak, Israel, to estimate the relative susceptibility and infectivity of children*, PLOS Computational Biology, February 11, 2021.
https://journals.plos.org/ploscompbiol/article?id=10.1371/journal.pcbi.1008559

in other countries supports the notion that it is not common for students to spread COVID-19 to their teachers. [4]

37.    No evidence shows that mask use has a significant impact on the spread of COVID-19. Evidence supporting surgical and cloth mask use is particularly very weak to control COVID-19 transmission among school children.[5,6]

38.    There is no clear scientific evidence that masks (surgical or cloth) work to mitigate risk to the wearer or to those coming into contact with the wearer *outside medical environments* which warrants the human cost of continuous mask use.[7]

39.    A recent study published earlier this summer demonstrated that mask use increases presence of carbon dioxide in inhaled air from about 400 ppm in the open, about 2000 ppm as an acceptable limitation in closed rooms, and a conclusion that masked children ranged from 6000 ppm to more than 25000 ppm carbon dioxide.[8]

---

[4] United States Center for Disease Control, *Science Brief: Transmission of SARS-CoV-2 in K-12 schools*, March 19, 2021 https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/transmission_k_12_schools.html (last checked August 12, 2021).

[5] Xiao J, Shiu EYC, Gao H, et al. Nonpharmaceutical measures for pandemic influenza in nonhealthcare settings —personal protective and environmental measures. Emerg Infect Dis. 2020;26(5):967-975. doi:10.3201/eid2605.190994PubMedGoogle ScholarCrossref

[6] Matuschek C, Moll F, Fangerau H, et al. Face masks: benefits and risks during the COVID-19 crisis. Eur J Med Res. 2020;25(1):32. doi:10.1186/s40001-020-00430-5PubMedGoogle ScholarCrossref.

[7] See the Declaration of Dr. Angelina Farella, attached as Exhibit 8.

[8] Walach H, Weikl R, Prentice J, et al. Experimental Assessment of Carbon Dioxide Content in Inhaled Air With or Without Face Masks in Healthy Children: A Randomized Clinical Trial. *JAMA Pediatr.* Published online June 30, 2021. doi:10.1001/jamapediatrics.2021.2659 (last checked August 12, 2021). See also the Declaration of Dr. Farella, Exhibit 8.

40.    In a self-reporting study that included results from more than 25,000 children, 68% of parents reported irritability, headaches, difficulty concentrating, less happiness, reluctance to go to school/kindergarten, malaise, impaired learning, and drowsiness or fatigue (37%).[9]

41.    Dallas ISD punishes children who do not wear masks. In one instance, at CityLab High School, a student has been seated behind a desk with a plexiglass front, outside the principal's office where classwork is delivered to him. The student is forbidden from interacting with teachers and other students. The student's desk is located on the fourth floor, but he is restricted to using the restroom on the first floor. The student is forbidden from leaving his desk, except to use the restroom. Exhibit 5 Declaration of Geller. Dallas ISD's treatment of unmasked students is tantamount to in school suspension by another name.

42.    At George Bannerman Dealey Montessori, unmasked students are segregated from peers and placed behind plexiglass barriers for the entire school day. During physical education class, they are cordoned off while other kids freely socialize. Further, unmasked students are required to eat separately from masked students, even though no students wear masks while eating. Exhibit 6 Declaration of Davis.

---

[9] Silke Schwarz, Ekkehart Jenetzky, Hanno Krafft et al. Corona Children Studies "Co-Ki": First Results of a Germany-Wide Registry on Mouth and Nose Covering (Mask) in Children, 28 April 2021, PREPRINT (Version 4) available at Research Square [https://doi.org/10.21203/rs.3.rs-124394/v4] (last checked August 12, 2021). See also Exh. 8, 9.

43.    At Hillcrest High School, students who are in compliance with GA-38 and not wearing masks to school are made to feel guilty and anxious throughout the day with indoctrination-type announcements thanking masked students for saving lives, as though there is some actual merit to the assertion. The guilt and anxiety is having tremendous mental health impacts. Exhibit 6 Declaration of Davis.

44.    At Lakewood Elementary and Mata Montessori in DISD, two students are forced to wear face masks which are clearly causing allergic reactions, swelling, and require medical attention. Their doctor has stated that the medical skin issues will only be resolved without wearing a mask. Yet, DISD has made no provision for medical exemptions in its mask policy. Exhibit 11 Declaration of Bistian.

45.    At Sudie Williams Talented and Gifted Academy, students are suffering depression, anxiety, and loss of empathy from the continual lack of interaction with other students and teachers. Before the pandemic, there was already a growing mental health and suicide crisis in the country. Measures like this one, which increases depression and anxiety among adolescents, only serves to exacerbate a life or death issue. Children may experience mental distress during the pandemic due to disruption in routines, loss of social contact, or stress in the household.[10] (See Exh. 12, Decl. of Raskin, Exh. 9, Decl. of Dr. Webb.)

---

[10] https://www.kff.org/coronavirus-covid-19/issue-brief/the-implications-of-covid-19-for-mental-health-and-substance-use/

DC-21-10101 *Koch v. Jenkins* – Parents for Medical Choice – Plea in Intervention, App. for Temporary Restraining Order, App. for Writ of Temporary Injunction -    Page 13

*iii. Jenkins's Order is damaging students all over Dallas County.*

46.    Additionally, Plano ISD has adopted irrational rules regarding mask wearing. For example, the district requires children to wear masks during physical exercise, and has denied children medical exemptions even when their pediatricians have given notes regarding children whose health is negatively impacted. See Declaration of Karri Alicen Weadon, attached as Exhibit 7.

C.    Experts testify that constant mask use causes irreparable harm to children.

47.    The ongoing constant use of masks causes irreparable harm, including medical harm as discussed in the Declaration of Dr. Farella (Exhibit 8) and psychological harm as discussed in the Declaration of Dr. Webb (Exhibit 9).

48.    Dr. Angelina Farella, a practicing pediatrician and authority on various COVID-19 strategies has detailed in her declaration the medical dangers of continuous and ongoing mask use with children. She testifies that such use is damaging to childhood health, increasing the carbon dioxide intake far beyond the usual 400 ppm experienced unmasked in the open. She observes that one study collected results showing the incoming air inhaled by masked children to be 6000 ppm to 25000 ppm carbon dioxide. She also details the physical damage caused by increased mask use, including fatigue, impaired learning, and sociological damage from isolation, anxiety, eating disorders, depression and suicide in children during the COVID-19 era. Exh. 8, Declaration of Dr. Farella.

49.    Exhibit 9 is the Declaration of Dr. Melanie Webb, a practicing forensic psychologist and leader in her field, also referenced *supra*. She has provided her declaration which states the short-term use of masks to "flatten the curve" at the beginning of the COVID era did not pose a significant risk, but the protracted use of masks has been disastrous for the mental health of children:

> 5. The proper socialization of children in school settings requires open communication between teachers and students. Use of face coverings has an isolating effect between humans who communicate non-verbally with their facial expressions, which acts to confirm the attitude and tone given by oral communications and other physical signals. For example, a teacher who is smiling at a student from many yards away gives a sense of welcome and security to a shy child who may be struggling to fit in. That smile and other signals that human communication employs routinely is eliminated in a mask setting. The natural impact of face coverings is to therefore raise uncertainty between students and teachers, as well as eliminating the natural lip-reading that all humans do when confirming what they are hearing.

> 6. In addition to the risks for decreased socialization of children, masks are likely to either cause emotional distress resulting in anxiety and/or depression or they will exacerbate symptoms of a pre-existing mental health condition. This occurs, in part, due to the negative impact on the socialization aspect of school, but simply feeling as though one's breathing is restricted, in and of itself, can trigger anxiety attacks as well as post-traumatic stress response in any child who has experience certain types of trauma.

> 7. The impact of face coverings in school-age children over the COVID era has been a factor in the increased negative indicators for children. Childhood suicide and depression has skyrocketed in the last two years, as well as anxiety and stunted social and language development.

Exhibit 9.

## VI.　APPLICABLE LEGAL AUTHORITIES

50.　This Court may declare the rights and other legal relations of the parties in dispute whether or not further relief is or could be sought.

51.　This Court has jurisdiction over the Plaintiffs' request for declaratory relief against Clay Jenkins because the Declaratory Judgment Act waives governmental immunity when the plaintiff is challenging the validity of an ordinance, order, or government action. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.004, 37.006.

52.　Pursuant to TEX. CIV. PRAC. & REM. CODE § 37.008 for a declaratory judgment action to be proper: (1) there must be a real controversy between the parties, and; (2) the controversy must be one that will actually be determined by the judicial declaration sought. *See Brooks v. Northglen Ass'n.*, 141 S.W.3d 158, 163–164 (Tex. 2004).

53.　Additionally, private parties may seek declaratory relief against state officials who act without authority and to compel state officers to act within their capacity. *Andrade v. NAACP of Austin*, 287 S.W.3d 240 (Tex. App. Austin 2009).

54.　An interested person may bring an action by mandamus or injunction to stop, prevent, or reverse violation of the Texas Open Meetings Act by members of a governmental body. Tex. Gov't Code, Sec. 551.142.

55.　Generally, notice of an agenda requires 72 hours; even an emergency addition must be provided a one-hour notice. Tex. Gov't Code § 551.045.

## VII.    CLAIMS

**SUMMARY: Jenkins must be enjoined from violating Plaintiffs' right to receive a free and appropriate public education; and Defendant ISDs must be enjoined from enforcing a face-covering policy adopted in violation of the Texas Open Meetings Act.**

56.    This Court may declare the rights and other legal relations of the parties in dispute, whether further relief is or could be sought.

57.    Based on the Texas Constitution and case law as cited above, Plaintiffs ask the Court to issue a temporary restraining order, temporary injunction, and then a permanent injunction after a full adjudication on the merits, preventing the Defendants from making up rules and enforcing them as though they were laws, as follows.

### Claim 1 - County Judge Clay Jenkins' rule requiring the children of the Parents for Medical Choice Intervenors to wear a mask is illegal and should be declared void.

58.    As described above, Jenkins has issued an order requiring the school children of Dallas County to wear a face covering.

59.    GA-38 disallows any governmental entity to require masks. County Judge Clay Jenkins, as a county judge, required the Plaintiff to wear a mask. County Judge Clay Jenkins is not obeying GA-38.

60.    Parents for Medical Choice Intervenors seek a declaration under section 37.003(a) of the Texas Civil Practice and Remedies Code, "A court of record

within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

61.    Parents for Medical Choice Intervenors seek a declaration that the Jenkins' "Mask rule" is illegal, has violated their rights and should be declared void.

62.    The declaration sought in the present case will remove uncertainty regarding rights and will resolve the controversy regarding whether the Defendant's "mask rule" is valid. Further, because Plaintiff is not requesting monetary damages, but rather is seeking a declaration that the Defendant's "mask rule" is illegal, he does not need an express statutory waiver of governmental immunity to seek declaratory relief. *See Tex. Natural Res. Conservation Comm'n*, 74 S.W.3d at 855.

63.    A declaration that any policy or procedure of the City that was used to justify any unlawful action taken against Plaintiff be found to be illegal and declared void as a matter of law falls within the scope of the Uniform Declaratory Judgment Act. *See Ackers v. City of Lubbock*, 253 S.W.3d 770, (Tex. App. 2007).

64.    Plaintiff's request for declaratory relief will, at the very least, remove uncertainty regarding the validity of Defendant's rule. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(b), 37.003(c); *Ackers*, 253 S.W.3d at 775.

65.    Concluding to the contrary would effectively render meaningless several relevant UDJA provisions and ignore the supreme court's directive that "[t]he rule requiring a waiver of governmental immunity to be clear and unambiguous cannot

be applied so rigidly that the almost certain intent of the Legislature is disregarded." *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995)."

## Claim 2 - The ISDs' adoption of a mask mandate violated TOMA.

66.    Meetings behind closed doors of government entities violate the Texas Open Meetings Act, codified as sec. 551.002 of the Texas Gov't Code, which requires that "[e]very regular, special, or called meeting of a governmental body shall be open to the public…". *Id*. The Texas Supreme Court has held that, "[t]he Open Meetings Act generally provides that an action taken in violation of the Act is 'voidable'…", *Town of Shady Shores v. Swanson*, No. 18-0413, 63 Tex. Sup. Ct. J. 180, 2019 Tex. LEXIS 1213, at *19 (Dec. 13, 2019).

67.    The ISD Defendants violated TOMA when adopting their policy by allowing their district superintendent to change the policy without a vote. While school districts may allow superintendents to perform operational duties, they can not shirk their fiduciary duties by allowing policy decisions which impact material rights and involve medical issues to be handled by the employee and unelected superintendent and thus try to avoid responsibility or public accountability for the actions taken.

## Claim 3 - School District Conduct Violates Texas & U.S. Constitutions

68.    The Texas Constitution requires that the state provides "[a] general diffusion of knowledge being essential to the preservation of the liberties and rights of the

people, it shall be the duty of the Legislature of the State to establish and make suitable provision for support and maintenance of an efficient system of public free schools." Tex. Const. Art. VII, § 1.

69.    Implicitly understood in this constitutional requirement to preserve our society is the requirement that school districts will provide for the education of all students within the district equally and without discrimination.

70.    In the instances cited within the school districts in this case, students are being treated unequally, being discriminated against, and are not receiving an efficient and sufficient public education as required by law.

71.    The school districts are treating the students who are not wearing requisite masks as a separate class of students, not entitled to in-person direct instruction, social interaction, and opportunities afforded to other students in the classroom. They are segregated, separated, and excluded from participating in the efficient education experience required by the Texas Constitution.

72.    Additionally, the Districts, who have made no exemptions for any medical or religious reasons from the mask requirements, are interfering in the decision-making authority of parents who know what is best for their children. The U.S. Supreme Court has long recognized that children are not "creatures of the state, those who nurture him and direct his destiny have the right, coupled with the high

duty, to recognize and prepare him for additional obligations." *Pierce v. Soc'y of Sisters,* 268 U.S. 510, 535, 45 S. Ct. 571, 573 (1925).

73.     In this case, the Districts have made no provision for the parents, who know their children's needs best, to make decisions about mask-wearing. The Districts may argue that they allow for the children not to wear masks, but the children must be segregated from others. Separate but equal is not a legal remedy.

### Claim 4 - Clay Jenkins and the board members of the Defendant ISDs should be removed from their position according to the Texas Local Gov't Code and the Texas Constitution.

74.     By deliberately disobeying GA-38, County Judge Clay Jenkins has shown his incompetency and demonstrated official misconduct by deliberately disobeying an executive order that carries the force of law under the Disaster Act.

75.     Sec. 24. Article V of the Texas Constitution allows for removal of county officers, including county judges, by Judges of the District Courts for incompetency and official misconduct upon finding of its truth by a jury.

76.     Section 87.013 allows a county judge to be removed for incompetency and official misconduct. Section 87.011 defines "incompetency" as "gross carelessness in discharge of those duties" and defines "official misconduct" as "unlawful behavior relating to official duties by an officer entrusted with the administration of justice or the execution of the law." The term includes an intentional or corrupt failure, refusal, or neglect of officers to perform legal duties.

77.     GA-38 specifically states that no government entity may require masks. County Judge Clay Jenkins showed gross carelessness in his duties by illegally requiring the plaintiff to wear a mask and removing him.

78.     County Judge Clay Jenkins intentionally refused to obey GA-38 by requiring Plaintiff to wear a mask.

79.     Clay Jenkins should be removed by a jury as county judge under Section 87.013 of the Loc. Govt. Code and Section 24, art. V of the Texas Constitution.

80.     Similarly, the trustees of the Defendant ISDs should be removed for their intentional dereliction of duties. When contacted, these trustees have acted like nothing more than observers and cheerleaders for their respective superintendents, but they have a duty to vote on policy matters, and cannot raise their hands in abandonment of any responsibility and point at the administration they hired.

81.     Intervenors recognize that the Court must issue an order regarding this claim before it can be processed in the normal way; this claim is herein provided to give all parties an understanding of the claims made against them, which in the best of worlds, would encourage some semblance of responsible action by the trustees of Dallas ISD and Richardson ISD that would make this claim less obviously appropriate.

## **Claim 5 - Application for Temporary Restraint and Injunction.**

82.    The purpose of a TRO is to preserve the status quo, which the Supreme Court has defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (cleaned up).

83.    A TRO restrains a party from acting only during the pendency of motion for temporary injunction, *i.e.*, until a full evidentiary hearing on the motion occurs. *Del Valle ISD v. Lopez*, 845 S.W.2d 808, 809 (Tex. 1992); see TEX. R. CIV. P. 680.82.

84.    Plaintiff seeks a TRO based on the above until the Court can rule on a temporary injunction lasting until the merits of the case can be adjudicated. Neither Defendant Jenkins nor the Defendant ISDs can show any actual harm in granting the relief requested; all their protesting medical assertions are based on appeals to authority that are misplaced. Defendant Jenkins and the Defendant ISDs have violated the legal process and the Texas Constitution in creating law and enforcing it without authority. Enjoining an already illegal action does not cause harm. Additionally, the status quo cannot be a violation of the law. *In re Newton*, 146 S.W.3d 648, 651. The Court in *Newton* held that the position of the parties just prior to the alleged violation was the last peaceable uncontested status between these parties that must be preserved by the temporary injunction…" *Id*.

85.    The harm to the Intervenors here, if such injunctive relief is denied, will be significant and irreparable. As detailed above, very real medical issues are the result of forced militant masking as the Defendants are employing.

86.    Intervenors ask that the Court temporarily enjoin County Judge Clay Jenkins, restraining him, his agents, representatives, employees or anyone acting on their behalf from taking any actions to enforce his recent mask order, or any iteration with the same language, including but not limited to requiring anyone to wear a mask, or any iteration of these orders until such time as the Court makes a final ruling on the matter.

87.    Absent judicial intervention, Intervenors face ongoing segregation, bullying, and ordinary medical damage for continuous mask usage. There is no adequate remedy at law that will give Intervenors relief while this case winds up and down the appellate ladder.

88.    Intervenors' damages cannot be measured with certainty, and it is neither equitable nor conscionable to allow Defendants to violate Intervenors' rights.

89.    The comparative balance of equities and hardships to the parties and to the public interest support granting temporary injunctive relief because Intervenors are only asking the Court to preserve the status quo, which has been to not require masking, and certainly not the militant masking as the ISDs are employing.

90.    Because Intervenors seek a TRO, it must file a bond. Because the order is sought against a government actor which will suffer no damage if granted, Intervenors' request that bond be set at $10.

## VIII.    ATTORNEY'S FEES

91.    Intervenors seek an award of reasonable attorney's fees as authorized by the Texas Declaratory Judgment Act and the Texas Open Meetings Act.

## IX.    CONDITIONS PRECEDENT

92.    Intervenors have satisfied all conditions precedent to bring this plea.

## X.    DEMAND FOR JURY TRIAL

93.    Intervenors demands trial by jury; trial by jury is also required by section 87.013 of the Texas Local Government Code.

## XI.    EVIDENCE PROVIDED

94.    Intervenors have affixed an appendix of declarations, which are her incorporated by reference.

## XII.    PRAYER

95.    Intervenors pray that Defendant Jenkins and the Defendant ISDs be cited to appear and answer, and Intervenors grant all relief to which Intervenors may be entitled in law and equity, including but not limited to:

   a.    a temporary restraining order, temporary injunction, and permanent injunction prohibiting Defendant Jenkins and the Defendant ISDs from enforcing a mask requirement;

   b.    a declaration that Defendant Jenkins's mask-covering rule is unconstitutional and an illegal violation of GA-38;

   c.    reasonable and necessary attorney's fees, costs, and interest as allowed; and

   d.    costs of court.

Respectfully submitted,

/s/ Warren V. Norred
**Warren V. Norred**,
Texas Bar No. 24045094, wnorred@norredlaw.com
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
*Attorney for Intervenors*

CERTIFICATE OF SERVICE –The foregoing was served on counsel for all parties via E-file.txcourts.gov on August 23, 2021.

/s/ Warren V. Norred

CAUSE NO. DC-21-10101

| | | |
|---|---|---|
| **J.J. KOCH,** | § | **DISTRICT COURT** |
| *Plaintiff,* | § | |
| v. | § | |
| **CLAY JENKINS, in his official capacity,** | § | |
| *Defendant,* | § | |
| and | § | |
| **O.D., et al,** | § | |
| *Pro-Mask Intervenors,* | § | |
| v. | § | |
| **GREG ABBOTT, as Gov. of State of Texas,** | § | **116th DISTRICT** |
| *Counter-Defendant,* | § | |
| **STATE OF TEXAS,** | § | |
| *Intervenor-Plaintiff and Counter-Defendant.* | § | |
| and | § | |
| **PARENTS FOR MEDICAL CHOICE, et al,** *Medical* | § | |
| *Choice Intervenors.* | § | |
| v. | § | |
| **RICHARDSON IND'T SCHOOL DIST.,** | § | |
| **DALLAS IND'T SCHOOL DIST.,** | § | |
| all their board members in their official capacity, | § | **DALLAS COUNTY,** |
| *Cross-Defendants* | § | **TEXAS** |

Appendix of Exhibits Intervenor-Plaintiff's Intervention

1. Declaration of Hale
2. Declaration of Schmidt
3. Declaration of Phipps
4. Declaration of McDonough
5. Declaration of Geller
6. Declaration of Davis

7. Declaration of Weadon
8. Declaration of Dr. Farella
9. Declaration of Dr. Webb
10. Executive Order GA-38
11. Declaration of Bistian
12. Declaration of Raskin

Respectfully submitted,
*/s/ Warren V. Norred*
**Warren V. Norred,**
Texas Bar No. 24045094, wnorred@norredlaw.com
515 E. Border St., Arlington, Texas 76010
Tel. (817) 704-3984, Fax. (817) 524-6686
*Attorney for Plaintiff, Intervenor*

**Certificate of Service:** I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via e-mail on August 23, 2021.
*/s/ Warren V. Norred*
Warren V. Norred

## DECLARATION
(Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Mercedi Hale my birthdate is ▮▮▮▮, 1983 ; and my address is ▮▮▮▮▮

▮▮▮▮, Richardson TX 75080.

I declare under penalty of perjury that the following statements are true and correct.

1.      I have a child who attends public school at: previously enrolled at Canyon Creek

Elementary in Richardson ISD. Children are no longer enrolled in Richardson ISD

because of the mask mandate.  MH is 13 years old and SH is 11 years old.

2.      I have experience with the way that my school's mask policy was enforced in the

past, including: masks were mandated during all indoor time except for eating lunch. No

medical excemption was allowed even with a letter from my chid's pediatrician

(attached).

3.      The above-described policy or action is damaging to me and my child because:

Wearing a mask made breathing difficult for MH and cause emotional stress and harm.

MH never delt with anxiety but had to start therapy because of the stress of wearing a

mask. MH was bullied all year by friends for not wanting to wear a mask. When MH

went to school with a thinner mask to make breathing easier, his teacher made him

change it for a medical paper mask without my concent. MH had to do a test in PE class

that included running 23 lengths of the basketball court with a mask on.  MH and SH

were taught songs in music class with the lyrics "we'll stay apart, we'll stay apart, we'll

---

wear masks and stay apart" and "wear your mask, wear mask, when you put a mask on you must hold it by the straps, and never never touch the front, treat your mask like it's your underwear, and change it everyday". SH had a medical exemption letter from his pediatrician that was no honored by RISD and he still had to wear a mask.

4.  My child's school is requiring face coverings of students although there is no specification for the face covering. Click here to enter text.

Executed in <u>Dallas  County</u>, State of Texas on <u>August 22</u>, 2021.

signed: _Mereeh Hale_

printed name: _Mercedi Hale_

Exhibit 2

## DECLARATION

(TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Mishelle Schmidt; my birthdate is ▮▮▮/79 ; and my address is ▮▮▮

▮▮▮▮▮, Dallas, TX 75248.

I declare under penalty of perjury that the following statements are true and correct.

1.    I have a child who attends public school at: JJ Pearce High School in the
Richardson ISD.  HJS is 17 and EJS is 14.

2.    I have experience with the way that my school's mask policy was enforced in the
past, including: Oldest son, HJS, arrived at school on the first day without a mask.  They
made him go to the library.  Told him he would have to do all of his work on his own in
Google Classroom with no help from teachers if he continued to show up without a mask.

3.    The above-described policy or action is damaging to me and my child because:
wearing a mask for 8 hours per day is damaging to my kids health.  It makes it hard for
them to breathe, and it most certainly has an effect on their ability to focus in the
classroom.

4.    My child's school is requiring face coverings of students although there is no
specification for the face covering. The district is also in violation of Governor Abbott's
Executive Order.

Executed in Jason A. Schmidt  County, State of Texas on August 19, 2021.

signed: _____

printed name: Mishelle Schmidt

---

Declaration                                                                                          Page 1

## DECLARATION
(TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Jason Schmidt; my birthdate is ████/70 ; and my address is ████████

████, Dallas, TX 75248.

I declare under penalty of perjury that the following statements are true and correct.

1.    I have a child who attends public school at: JJ Pearce High School in the
Richardson ISD.  HJS is 17 and EJS is 14.

2.    I have experience with the way that my school's mask policy was enforced in the
past, including: Oldest son, HJS, arrived at school on the first day without a mask.  They
made him go to the library.  Told him he would have to do all of his work on his own in
Google Classroom with no help from teachers if he continued to show up without a mask.

3.    The above-described policy or action is damaging to me and my child because:
wearing a mask for 8 hours per day is damaging to my kids health.  It makes it hard for
them to breathe, and it most certainly has an effect on their ability to focus in the
classroom.

4.    My child's school is requiring face coverings of students although there is no
specification for the face covering. The district is also in violation of Governor Abbott's
Executive Order.

Executed in Jason A. Schmidt  County, State of Texas on August 19, 2021.

signed:  _____

printed name: _JASON A. Schmidt_

Exhibit 3

# DECLARATION
### (TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Amy Phipps; my birthdate is ███████,1980 ; and my address is ███ ███████, Richardson, TX 75080.

I declare under penalty of perjury that the following statements are true and correct.

1.  I have a child who attends public school at: Richardson Independent School District; K.P. age 11 years and K.P. age 8 years both attend Arapaho Classical Magnet; T.P. age 13 attends Richardson West Junior High.

2.  I have experience with the way that my school's mask policy was enforced in the past, including:  Arapaho Classical Magnet Elementary's principal harassed my child K.P. on the first day of school by removing him from class, isolating him in the library, preventing him from an equal education, denied him recess with his class where no one is required to wear mask outdoors, and lied to him about being able to attend P.E. and recess.

3.  The above-described policy or action is damaging to me and my child because: two of my children suffer from auto immune issues that can be excacerbated by restricting oxygen intake.

4.  My child's school is requiring face coverings of students although there is no specification for the face covering. The principal at Arapaho Classical Magnet Elementary uses intimidation and bullying tactics to force children to wear masks.

Executed in Dallas  County, State of Texas on August 19, 2021.

Exhibit 3

signed: _____

printed name: _Amy Phipps_____

## DECLARATION
### (Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Lauren McDonough my birthdate is ███ , 1981 ; and my address is ███

███ , Richardson, Texas 75080.

I declare under penalty of perjury that the following statements are true and correct.

1.    I have a child who attends public school at: Mohawk Elementary in Richardson

Independent School District. AM – 9 years and BM – 6 years.

2.    I have experience with the way that my school's mask policy was enforced in the

past, including:  forcing all children to wear a mask at all times, including physical

education. The superintendent has taken the liberty to make all decisions on COVID

mitigation efforts without the support of the Board. The school has ignored my paperwork

stating that I am the parent and get to make medical decisions for my children.

3.    The above-described policy or action is damaging to me and my child because: It

decreases the amount of oxygen my children are able to breathe in and increases the $CO_2$.

These masks are full of germs from touching things and not knowing proper mask

protocol and from the child's own mucous from coughing and sneezing.  They are

breathing in these germs, which is likely causing the increased of strep we experienced

this last year. My oldest daughter is a high-anxiety child. She struggles with feeling like

she can't breathe, feels dizzy and light headed, complains of headaches, sleepiness, and

the inability to focus on her school work. Both my children also wear glasses and they

fog continuously, not allowing them to see properly.  They are too young for contacts.

My younger child has speech issues. It is imperative for her to see mouths and the formation of words if she is going to improve in her speech. Both children are missing out on the body language and facial expressions of interacting with humans. People, especially children, need to be able to see the face to develop properly. This practice is teaching my children to live in fear—to be afraid of other people, illnesses, and even the air they breathe. Prolonged fear is terror, and terror becomes trauma. They are afraid of getting trouble at school, so they sacrifice their freedom at school. Children should never be put in this position by the school district. The Texas Education Code states that parents are "full partners" in education; in fact they are the primary educator and the school is secondary. These rights have been stripped from us. This issue has also taken a significant amount of my time and energy. I have been going and speaking at school board meetings, meeting with my principal and teachers. I am a single mother and fighting this battle takes me away from the most important thing in my life (besides Jesus) ... my children.

4.     **My child's school is requiring face coverings of students although there is no specification for the face covering.** Additionally, click here to enter any other thing you wish to add.

Executed in _Dallas_ County, State of Texas on _August 18_, 2021.

signed: _Lauren McDonough_

printed name: _Lauren McDonough_

## DECLARATION
(TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Michael L. Geller; my birthdate is , 1961; and my address is ███

████████, Dallas, Texas 75230.

I declare under penalty of perjury that the following statements are true and correct.

1.  I have a child who attends public school at Dallas Independent School District's
CityLab High School, located at 912 South Ervay Street, Dallas, Texas 75201.  My
child is 16 years old and in 11ᵗʰ grade.

2.  I have experience with the way that my school's mask policy has been enforced:
While my son is allowed on the premises without a mask, he is restricted to a desk with
a plexiglass front, located outside of the principal's office on the fourth floor.
Classwork is delivered to his desk.  He cannot interact with his teachers or other
students.  While there are rest rooms on each floor, he is restricted to using the rest
room on the first floor, because it is the least used.  Other than using the rest room, he is
otherwise restricted to his desk outside of the principal's office.

3.  The above-described policy or action is damaging to me and my child because he
is barred from the full in-school educational experience.  He is treated as essentially an
in-school suspension.  He cannot interact with his teachers or fellow students.  He is

restricted to his desk without the ability to fully move about the school. Even while on zoom last year, he could interact with his teachers and fellow students, and now that he is finally on the premises, he is restricted from doing so. He is isolated until a teacher or student happens to visit his desk. He is required to use one rest room three floors down. While he is technically on the premises without a mask, DISD is constructively enforcing its unauthorized mask mandate by restricting him to a desk, denying him interaction in the school and restricting his education.

Additionally, a primary purpose of public education is to produce informed and engaged citizens, leaders of the next generation. School personnel are to model proper citizen behaviors. DISD officials, by thwarting the Governor's directive, are telling students, *including my son*, that it is acceptable to pick and choose which laws, rules or regulations you want to comply with, and disregard those you disagree with. Public education is designed to teach students: that there is a constitutional system, with clearly defined and established processes to address needs; the interplay between the executive and legislative branches of government; the role of the judicial branch in reviewing executive and legislative action; such that students become engaged adults well versed in governmental processes to address their concerns. DISD officials threaten this framework, by undermining student respect for the rule of law, and democratic processes, that bring order and stability to society. The message sent to my son, that you can pick and choose which rules you will comply with, is inimical to him.

Exhibit 5

By signing this declaration, I am giving permission for it to be used in litigation concerning masks in any Texas case.

Executed in Dallas County, State of Texas on 22 August, 2021.

signed: _____

printed name: Michael L. Geller

Exhibit 6

## DECLARATION
### (Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Lauren Owens Davis; my birthdate is ███████, 1983; and my address

is ████████, Dallas, TX 75230.

I declare under penalty of perjury that the following statements are true and correct.

1.      I have a child who attends public school at: George Bannerman Dealey Montessori

and Hillcrest High School, Dallas ISD, ████ (age 13, grade 8), ████ (age 11, grade

5), and ████ (age 14, grade 9).

2.      I have experience with the way that my school's mask policy has been enforced,

including: requiring masks to be always worn by students and visitors on campus indoors

and outdoors.

3.      The above-described policy or action is damaging to me and my child because: the

masks cause breathing interruption, anxiety producing fear and guilt, foggy glasses. For

these reasons and since the mask mandate is in violation of GA-38 ████, ████, and

████ have gone to school without wearing a mask. ████ and ████ have

experienced complete disruption to the learning day by segregating them both from their

peers. They both are placed in separate areas away from their peers with plexiglass

barriers during the entire school day. During PE class they are both subjected to being

coned off while they watch all the kids play freely and socialize. ████ sat crying on

and off the entire first PE class this happened in and no teacher provided her any support

or help. ████ has been moved away from her peers at the lunch table when all other

students are maskless to eat. ▮▮▮▮ was the only student in class that had to keep her highlighter when all other students were allowed to turn the highlighters back into the teacher. ▮▮▮▮ and ▮▮▮▮ are both asked repeatedly to put on a mask when it is fully known that are not wearing them. One teacher harassed ▮▮▮▮ and ▮▮▮▮ in front of their friends during end of day pick up by asking repeatedly if they were unenrolling in school since they will not wear a mask. The principal has repeatedly denied my requests for equal and inclusive treatment for my students. Daily occurrences happen where teachers praise the mask wearing children in front of my children without masks, ▮▮▮▮ and ▮▮▮▮ are being denied participation in their physical education and various educational activities throughout the day. The Principal at Dealey and all teachers failed to inform the school counselor of any of the horrible situations my children faced, ultimately withholding critical school counseling services from them. In the Highschool setting for my son ▮▮▮▮ he has experienced immense guilt due to the daily announcements of thanking student for saving lives by masking. Both ▮▮▮▮ and ▮▮▮▮ have long documented mental health challenges and these announcements cause ▮▮▮▮ specifically very severe anxiety. ▮▮▮▮ has been forced against his true desire to remain maskless through these guilt tactics. Due to his mental health history of suicide these are extremely dangerous triggering events he faces daily with the mask guilting and shaming school wide announcements. As of today, August 23, the Principal at Dealey informed me that they are moving ▮▮▮▮ and ▮▮▮▮ to complete isolation in the library where they are unable to interact with any peers. The principal stated she is

Exhibit 6

accommodating parent requests and teachers who refuse to be by unmasked children. Dealey is also prohibiting my children access to the cafeteria where all children sit unmasked. Overall, these actions taken by the DISD administration are treating my unmasked children like they are the virus itself. DISD is segregating, intimidating, allowing a hostile education environment to continue to bully their way into compliance of an illegal mandate.

By signing this declaration, I am giving permission for it to be used in litigation concerning masks in any Texas case.

Executed in Dallas County, State of Texas on August 23, 2021.

signed: Lauren Owens Davis (Aug 23, 2021 10:34 CDT)

printed name:     Lauren Owens Davis

## DECLARATION
(TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Karri Alicen Weadon; my birthdate is ████████, 1981; and my address is ████████████, Plano, TX 75025.

I declare under penalty of perjury that the following statements are true and correct.

1.    I have a child who attends public school at: Skaggs Elementary School in Plano ISD. My children who attend this school are ████ (age 10) and ████ (age 7).

2.    I have experience with the way that my school's mask policy has been enforced, including: Last year our school made all students wear masks in the school and outside on recess. There were few exceptions that allowed students to take the face mask off. They even had to wear masks in physical education class. If a student did not come to school with a mask, they had to go directly to the school nurse's office until a parent could bring a mask. This happened to my children several times.

3.    The above-described policy or action is damaging to me and my child because: Both my children came home with headaches. ████ came home with a headache every day and explained to me many times while crying that he couldn't breathe well at school because of the face mask. ████ came home with headaches sometimes, but her main complaint was she had a really hard time breathing. She said it was scary not being able to breathe well. She was stressed out all day every day because she saw other students get in trouble for not having the mask over their noses and mouths and she didn't want to get in trouble. So she suffered in silence while at school. Toward the end of the school

year, my children started seeing another doctor (due to their previous doctor passing away) who wrote notes to our principal and nurse explaining that my children should not wear face masks at school due to medical reasons. I presented the notes to the principal. Despite presenting the doctor's orders, my children still had to wear face masks in the hallways of the building, in music class, physical education, and art. It was emotionally hard on me every day that I dropped them off at school, knowing they wouldn't be able to breathe well and knowing they would receive headaches. I know the masks were taking an emotional toll on my children, and because of their suffering, I suffered emotionally.

By signing this declaration, I am giving permission for it to be used in litigation concerning masks in any Texas case.

Executed in _Dallas_ County, State of Texas on _August 22,_ 2021.

signed: _Karri Weadon_

printed name: _Karri Weadon_

Exhibit 8

# Declaration of Dr. Angelina Farella

My name is Dr. Angelina Farella. My date of birth is ▮▮▮▮▮, 1969. My business address is 425 Henrietta St, Webster, TX 77598, in Harris County, Texas.

I declare under penalty of perjury that the following statements are true and correct:

1. I am a board-certified pediatrician and have been practicing in this area for more than 25 years. I am a member of multiple professional medical associations, including the Harris County Medical Society, American Academy of Physicians and Surgeons, and and Texas Medical Association.

2. I operate my practice in Webster, Texas, known as "A Brighter Tomorrow Pediatrics" and have been honored as a Leader in Healthcare, receiving a "Doctor of Excellence Award in 2014, represented the Texas Medical Association as a delegate since 2015, and have previously served as the Chief Pediatric Resident at University of Texas Medical Branch, Galveston, TX.

3. I have treated hundreds of COVID-19 patients. My experience reflects the collected statistics that children have a 99.997% survivability rate. That is before any active treatment. There exists no accurate study that indicates children materially spreads the virus.

4. In my practice, I have become experienced and knowledgeable about strategies to prevent COVID-19, including face coverings by children, and spoken publicly on this issue multiple times, including testimony to the Texas Senate.

5. Continuous and ongoing mask use with children is damaging to the health of children, increasing the carbon dioxide intake far beyond the usual 400 ppm one might experience unmasked in the open; one study collected results showing the incoming air inhaled by masked children to be 6000 ppm to 25000 ppm carbon dioxide.[1]

6. Mask use by children has resulted in many increased physical issues, including fatigue and impaired learning, but also sociological damage. The impact of isolation due to masking is part of the increased mental health issues including anxiety, eating disorders, depression and suicide in children during the COVID-19 era.

Executed in Harris County, State of Texas on August 12, 2021.

_Angelica Farella MD_

Angelina Farella, MD

---

[1] Walach H, Weikl R, Prentice J, et al. Experimental Assessment of Carbon Dioxide Content in Inhaled Air With or Without Face Masks in Healthy Children: A Randomized Clinical Trial. *JAMA Pediatr.* Published online June 30, 2021. doi:10.1001/jamapediatrics.2021.2659 (last checked August 12, 2021).

Exhibit 9

## Declaration of Melanie F. Webb, PsyD

My name is Melanie F. Webb, PsyD. My date of birth is ███████, 1969. My business address is 985 IH 10, North, Ste. 110G, Beaumont, TX 77706. I declare under penalty of perjury that the following statements are true and correct:

1. My name is Melanie F. Webb, PsyD. I am a clinical psychologist specializing in forensic practice and licensed to practice by the Texas State Board of Examiners of Psychologists. I am a multigenerational native Texan, born and raised in the Beaumont area and graduated from Lumberton High School in 1987. I have been practicing since 2004, when I received my Doctor of Psychology from the Colorado School of Professional Psychology.

2. I am currently in private practice in Beaumont. Prior to opening my practice, I served for four years as a staff psychologist for the Texas Department of Public Safety in Austin. I also served as Psychological Services Manager for Tarrant County Juvenile Probation Department Chief Psychologist of the Adult Psychiatric Unit of the Austin State Hospital, and the Clinical Director of the Corsicana Stabilization of the Texas Youth Commission. I have performed more than a thousand forensic evaluations and assisted in hundreds of juvenile procedures as well as worked with many children and adolescents in therapy.

3. I am writing this declaration to share my professional opinions regarding the use of face coverings in schools by school-age children and their negative impact on children.

4. At the beginning of the COVID-19 era, the short-term use of masks to "flatten the curve" and "take the pressure off frontline healthcare workers" did not pose a significant risk or damage. However, in the last year, the protracted use of masks has been disastrous for the mental health of children.

5. The proper socialization of children in school settings requires open communication between teachers and students. Use of face coverings has an isolating effect between humans who communicate non-verbally with their facial expressions, which acts to confirm the attitude and tone given by oral communications and other physical signals. For example, a teacher who is smiling at a student from many yards away gives a sense of welcome and security to a shy child who may be struggling to fit in. That smile and other signals that human communication employs routinely is eliminated in a mask setting. The natural impact of face coverings is to therefore raise uncertainty

between students and teachers, as well as eliminating the natural lip-reading that all humans do when confirming what they are hearing.

6. In addition to the risks for decreased socialization of children, masks are likely to either cause emotional distress resulting in anxiety and/or depression or they will exacerbate symptoms of a pre-existing mental health condition. This occurs, in part, due to the negative impact on the socialization aspect of school, but simply feeling as though one's breathing is restricted, in and of itself, can trigger anxiety attacks as well as post-traumatic stress response in any child who has experience certain types of trauma.

7. The impact of face coverings in school-age children over the COVID era has been a factor in the increased negative indicators for children. Childhood suicide and depression has skyrocketed in the last two years, as well as anxiety and stunted social and language development.

Executed in Jefferson County, State of Texas on August 12, 2021.


Melanie F. Webb, PsyD

# Executive Order

**BY THE**
**GOVERNOR OF THE STATE OF TEXAS**

**Executive Department**
**Austin, Texas**
**July 29, 2021**

**EXECUTIVE ORDER**
**GA 38**

*Relating to the continued response to the COVID-19 disaster.*

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all Texas counties; and

WHEREAS, in each subsequent month effective through today, I have renewed the COVID-19 disaster declaration for all Texas counties; and

WHEREAS, from March 2020 through May 2021, I issued a series of executive orders aimed at protecting the health and safety of Texans, ensuring uniformity throughout Texas, and achieving the least restrictive means of combatting the evolving threat to public health by adjusting social-distancing and other mitigation strategies; and

WHEREAS, combining into one executive order the requirements of several existing COVID-19 executive orders will further promote statewide uniformity and certainty; and

WHEREAS, as the COVID-19 pandemic continues, Texans are strongly encouraged as a matter of personal responsibility to consistently follow good hygiene, social-distancing, and other mitigation practices; and

WHEREAS, receiving a COVID-19 vaccine under an emergency use authorization is always voluntary in Texas and will never be mandated by the government, but it is strongly encouraged for those eligible to receive one; and

WHEREAS, state and local officials should continue to use every reasonable means to make the COVID-19 vaccine available for any eligible person who chooses to receive one; and

WHEREAS, in the Texas Disaster Act of 1975, the legislature charged the governor with the responsibility "for meeting ... the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and expressly granted the governor broad authority to fulfill that responsibility; and

WHEREAS, under Section 418.012, the "governor may issue executive orders ... hav[ing] the force and effect of law;" and

WHEREAS, under Section 418.016(a), the "governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business ... if strict compliance with the provisions ... would in any way prevent, hinder, or delay necessary action in coping with a disaster;" and

WHEREAS, under Section 418.018(c), the "governor may control ingress and egress to

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
3:15 ᴘᴍ O'CLOCK

JUL 2 9 2021

and from a disaster area and the movement of persons and the occupancy of premises in the area;" and

WHEREAS, under Section 418.173, the legislature authorized as "an offense," punishable by a fine up to $1,000, any "failure to comply with the [state emergency management plan] or with a rule, order, or ordinance adopted under the plan;"

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby order the following on a statewide basis effective immediately:

1. To ensure the continued availability of timely information about COVID-19 testing and hospital bed capacity that is crucial to efforts to cope with the COVID-19 disaster, the following requirements apply:

   a. All hospitals licensed under Chapter 241 of the Texas Health and Safety Code, and all Texas state-run hospitals, except for psychiatric hospitals, shall submit to the Texas Department of State Health Services (DSHS) daily reports of hospital bed capacity, in the manner prescribed by DSHS. DSHS shall promptly share this information with the Centers for Disease Control and Prevention (CDC).
   b. Every public or private entity that is utilizing an FDA-approved test, including an emergency use authorization test, for human diagnostic purposes of COVID-19, shall submit to DSHS, as well as to the local health department, daily reports of all test results, both positive and negative. DSHS shall promptly share this information with the CDC.

2. To ensure that vaccines continue to be voluntary for all Texans and that Texans' private COVID-19-related health information continues to enjoy protection against compelled disclosure, in addition to new laws enacted by the legislature against so-called "vaccine passports," the following requirements apply:

   a. No governmental entity can compel any individual to receive a COVID-19 vaccine administered under an emergency use authorization. I hereby suspend Section 81.082(f)(1) of the Texas Health and Safety Code to the extent necessary to ensure that no governmental entity can compel any individual to receive a COVID-19 vaccine administered under an emergency use authorization.
   b. State agencies and political subdivisions shall not adopt or enforce any order, ordinance, policy, regulation, rule, or similar measure that requires an individual to provide, as a condition of receiving any service or entering any place, documentation regarding the individual's vaccination status for any COVID-19 vaccine administered under an emergency use authorization. I hereby suspend Section 81.085(i) of the Texas Health and Safety Code to the extent necessary to enforce this prohibition. This paragraph does not apply to any documentation requirements necessary for the administration of a COVID-19 vaccine.
   c. Any public or private entity that is receiving or will receive public funds through any means, including grants, contracts, loans, or other disbursements of taxpayer money, shall not require a consumer to provide, as a condition of receiving any service or entering any place, documentation regarding the consumer's vaccination status for any COVID-19 vaccine administered under an emergency use authorization. No consumer may be denied entry to a facility financed

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
3:15PM O'CLOCK

JUL 2 9 2021

in whole or in part by public funds for failure to provide documentation regarding the consumer's vaccination status for any COVID-19 vaccine administered under an emergency use authorization.

d. Nothing in this executive order shall be construed to limit the ability of a nursing home, state supported living center, assisted living facility, or long-term care facility to require documentation of a resident's vaccination status for any COVID-19 vaccine.

e. This paragraph number 2 shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster. I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order.

3. To ensure the ability of Texans to preserve livelihoods while protecting lives, the following requirements apply:

a. There are no COVID-19-related operating limits for any business or other establishment.

b. In areas where the COVID-19 transmission rate is high, individuals are encouraged to follow the safe practices they have already mastered, such as wearing face coverings over the nose and mouth wherever it is not feasible to maintain six feet of social distancing from another person not in the same household, but no person may be required by any jurisdiction to wear or to mandate the wearing of a face covering.

c. In providing or obtaining services, every person (including individuals, businesses, and other legal entities) is strongly encouraged to use good-faith efforts and available resources to follow the Texas Department of State Health Services (DSHS) health recommendations, found at www.dshs.texas.gov/coronavirus.

d. Nursing homes, state supported living centers, assisted living facilities, and long-term care facilities should follow guidance from the Texas Health and Human Services Commission (HHSC) regarding visitations, and should follow infection control policies and practices set forth by HHSC, including minimizing the movement of staff between facilities whenever possible.

e. Public schools may operate as provided by, and under the minimum standard health protocols found in, guidance issued by the Texas Education Agency. Private schools and institutions of higher education are encouraged to establish similar standards.

f. County and municipal jails should follow guidance from the Texas Commission on Jail Standards regarding visitations.

g. As stated above, business activities and legal proceedings are free to proceed without COVID-19-related limitations imposed by local governmental entities or officials. This paragraph number 3 supersedes any conflicting local order in response to the COVID-19 disaster, and all relevant laws are suspended to the extent necessary to preclude any such inconsistent local orders. Pursuant to the legislature's command in Section 418.173 of the Texas Government Code and the State's emergency management plan, the imposition of any conflicting or inconsistent limitation by a local governmental entity or official constitutes a "failure to comply with" this executive order that is subject to a fine up to $1,000.

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
3:15 PM O'CLOCK

JUL 2 9 2021

4. To further ensure that no governmental entity can mandate masks, the following requirements shall continue to apply:

   a. No governmental entity, including a county, city, school district, and public health authority, and no governmental official may require any person to wear a face covering or to mandate that another person wear a face covering; *provided, however, that*:
      i. state supported living centers, government-owned hospitals, and government-operated hospitals may continue to use appropriate policies regarding the wearing of face coverings; and
      ii. the Texas Department of Criminal Justice, the Texas Juvenile Justice Department, and any county and municipal jails acting consistent with guidance by the Texas Commission on Jail Standards may continue to use appropriate policies regarding the wearing of face coverings.

   b. This paragraph number 4 shall supersede any face-covering requirement imposed by any local governmental entity or official, except as explicitly provided in subparagraph number 4.a. To the extent necessary to ensure that local governmental entities or officials do not impose any such face-covering requirements, I hereby suspend the following:

      i.    Sections 418.1015(b) and 418.108 of the Texas Government Code;

      ii.   Chapter 81, Subchapter E of the Texas Health and Safety Code;

      iii.  Chapters 121, 122, and 341 of the Texas Health and Safety Code;

      iv.   Chapter 54 of the Texas Local Government Code; and

      v.    Any other statute invoked by any local governmental entity or official in support of a face-covering requirement.

   Pursuant to the legislature's command in Section 418.173 of the Texas Government Code and the State's emergency management plan, the imposition of any such face-covering requirement by a local governmental entity or official constitutes a "failure to comply with" this executive order that is subject to a fine up to $1,000.

   c. Even though face coverings cannot be mandated by any governmental entity, that does not prevent individuals from wearing one if they choose.

5. To further ensure uniformity statewide:

   a. This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts services allowed by this executive order or allows gatherings restricted by this executive order. Pursuant to Section 418.016(a) of the Texas Government Code, I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the

COVID-19 disaster that are inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

b.  Confinement in jail is not an available penalty for violating this executive order. To the extent any order issued by local officials in response to the COVID-19 disaster would allow confinement in jail as an available penalty for violating a COVID-19-related order, that order allowing confinement in jail is superseded, and I hereby suspend all relevant laws to the extent necessary to ensure that local officials do not confine people in jail for violating any executive order or local order issued in response to the COVID-19 disaster.

This executive order supersedes all pre-existing COVID-19-related executive orders and rescinds them in their entirety, except that it does not supersede or rescind Executive Orders GA-13 or GA-37. This executive order shall remain in effect and in full force unless it is modified, amended, rescinded, or superseded by the governor. This executive order may also be amended by proclamation of the governor.

Given under my hand this the 29th day of July, 2021.

GREG ABBOTT
Governor

ATTESTED BY:

JOE A. ESPARZA
Deputy Secretary of State

# DECLARATION
## (TEX. CIV. PRAC. & REM. CODE § 132.001)

My name is Lidia Bistian; my birth date is ████ /1980; and my address is ████████████ Dallas TX. I declare under penalty of perjury that the following statements are true and correct.

I have two children in DISD - N.B., who attends public school at Lakewood School, and M.B. who attends the Montessori School in DISD. I am aware that these schools are requiring face coverings while on DISD property. This policy is damaging to my son, because he developed a severe allergic reaction to the mask. This has gotten worse day by day. At first it started as an itchy rash on the cheek which then spread quickly to his whole cheeks, lips and also causing his eyes to swell. His skin was extremely irritated. See attached pictures. We have seen a doctor twice and they've said the only way it will get better is if he does not wear a mask or face shield. This affect my children in school performance, trouble breathing, headaches and stress. The school refuses to be reasonable or cooperate when informed of the doctor's opinion.

By signing this declaration, I am giving permission for it to be used in litigation concerning masks in any Texas case.

Executed in Dallas County, State of Texas on 08/23, 2021.

signed:_____Lidia Bistian_____

printed name:_____ *Lidia Bistian* _____




## DECLARATION
(Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Allyson Raskin; my birthdate is ███████, 1976; and my address is ██████

███████ Dallas, TX 75230.

I declare under penalty of perjury that the following statements are true and correct.

1.     I have a child who attends public school at: Sudie Williams TAG, DISD, and she is in the 8th grade.

2.     I have experience with the way that my school's mask policy has been enforced, including: The children are being made to wear face masks the entire day of school.

3.     The above-described policy or action is damaging to me and my child because: This masking policy has created anxiety and depression for our daughter. She has also suffered in making and keeping friends because of this masking policy. These children cannot read each other's expression and are losing empathy! My son also suffered so much last year with anxiety that we pulled him from DISD and found a small private school. We had to pay $10,000 out of pocket for that school and drive 2 hours a day which took away from our business as we are both self-employed.

By signing this declaration, I am giving permission for it to be used in litigation concerning masks in any Texas case.

Executed in Tarrant County, State of Texas on ENTER DATE, 2021.

signed: _Allyson Raskin_____

printed name:_____Allyson Raskin____

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Norred on behalf of Warren Norred
Bar No. 24045094
wnorred@norredlaw.com
Envelope ID: 56575321
Status as of 8/24/2021 10:28 AM CST

Associated Case Party: CLAY JENKINS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sha'Huni Robinson | | srobinson@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Elizabeth Davila | | edavila@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Brent R.Walker | | bwalker@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Charla G.Aldous | | caldous@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Ellen Lessem | | elessem@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Sean McCaffity | | SMcCaffity@textrial.com | 8/23/2021 6:09:50 PM | SENT |
| Caleb Miller | | cmiller@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Tiffany Standly | | tstandly@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Jeff Rasansky | | jrasansky@aldouslaw.com | 8/23/2021 6:09:50 PM | SENT |
| Doug Alexander | | dalexander@adjtlaw.com | 8/23/2021 6:09:50 PM | SENT |
| Sean McCaffity | | SMcCaffity@textrial.com | 8/23/2021 6:09:50 PM | SENT |
| Amy Warr | | awarr@adjtlaw.com | 8/23/2021 6:09:50 PM | SENT |
| Kirsten Castaneda | | kcastaneda@adjtlaw.com | 8/23/2021 6:09:50 PM | SENT |

Associated Case Party: STATE OF TEXAS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Benjamin Dower | 24082931 | Benjamin.Dower@oag.texas.gov | 8/23/2021 6:09:50 PM | SENT |
| Thomas Ray | | thomas.ray@oag.texas.gov | 8/23/2021 6:09:50 PM | SENT |
| Todd Dickerson | 24118368 | tadickers@gmail.com | 8/23/2021 6:09:50 PM | SENT |
| Todd Dickerson | | todd.dickerson@oag.texas.gov | 8/23/2021 6:09:50 PM | SENT |

Case Contacts

| Name |
|------|

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Norred on behalf of Warren Norred
Bar No. 24045094
wnorred@norredlaw.com
Envelope ID: 56575321
Status as of 8/24/2021 10:28 AM CST

Case Contacts

| George Quesada | | quesada@textrial.com | 8/23/2021 6:09:50 PM | SENT |
|---|---|---|---|---|
| Dana Chandler | | dchandler@textrial.com | 8/23/2021 6:09:50 PM | SENT |
| Warren Norred | 24045094 | wnorred@norredlaw.com | 8/23/2021 6:09:50 PM | SENT |
| Bethzabeth Loya | | bloya@textrial.com | 8/23/2021 6:09:50 PM | SENT |
| Norred Law, PLLC | | court@norredlaw.com | 8/23/2021 6:09:50 PM | SENT |
| Nicole Pioli | | npioli@textrial.com | 8/23/2021 6:09:50 PM | SENT |