# No. 21-11180

## In the United States Court of Appeals for the Fifth Circuit

Allyson Raskin, *on behalf of her minor children* JD1 and JD2,
*Plaintiff—Appellant*

v.

Dallas Independent School District; Dallas Independent School District Board of Trustees; Michael Hinojosa, *Superintendent of the Dallas Independent School District in his individual capacity and in his official capacity as Superintendent of the Dallas Independent School District*; Ben Mackey, *President*; Edwin Flores, *1st Vice President*; Maxie Johnson, *2nd Vice President*; Joe Carreon, *Board Secretary*; Dustin Marshall; Dan Micciche; Karla Garcia; Joyce Foreman; Justin Henry, *all in their individual capacities and in their capacities as Members of the Dallas Indpendent School District Board of Trustees*,
*Defendants—Appellees*,

On Appeal from the United States District Court, Northern District of Texas, Dallas Division, No. 3:21-cv-2429-L, Honorable Sam A. Lindsay, Presiding.

## Reply Brief of Court-Appointed Amicus Curiae Supporting Appellant Allyson Raskin and Reversal

Cody W. Stafford
Dobrowski Stafford LLP
4601 Washington Ave, Suite 300
Houston, Texas 77007
(713) 659-2900
cstafford@doblaw.com

*Court-Appointed Amicus Curiae*

## Table of Contents

Table of Contents ................................................................................. 2

Table of Authorities ........................................................................... 3

Argument in Reply ............................................................................... 5

   A.   Introduction. ................................................................................ 5

   B.   Federal courts do not uniformly apply the counsel mandate. ........ 6

   C.   The "policy grounds" do not support a rigid counsel mandate. ..... 8

       1.   The counsel mandate upends the Judiciary Act. ................... 8

       2.   The counsel mandate is unnecessary to protect children's legal rights. ........................................................................ 9

       3.   The remote possibility of obtaining appointed counsel does not cure the counsel mandate's ills. ..................................... 11

       4.   The counsel mandate does not properly defer to state law. ............... 12

   D.   The district court's summary dismissal did not satisfy Rule 17(c). ............... 12

   E.   A case-by-case application of the counsel mandate would effectively protect children's legal claims while providing more equitable court access. ............................................................................................ 14

Conclusion & Prayer .......................................................................... 15

Certificate of Service ....................................................................... 16

Certificate of Compliance ................................................................ 16

## Table of Authorities

**Cases**

*Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*,
  756 F.3d 327 (5th Cir. 2014) ................................................................................. 7

*Cheung v. Youth Orchestra Found. of Buffalo, Inc.*,
  906 F.2d 59 (2d Cir. 1990) .................................................................................... 9

*Delaughter v. Woodall*,
  909 F.3d 130 (5th Cir. 2018) ................................................................................11

*Elustra v. Mineo*,
  595 F.3d 699 (7th Cir. 2010) ................................................................................. 7

*Ex parte Harding*,
  219 U.S. 363 (1911) .............................................................................................. 9

*Felderhoff v. Felderhoff*,
  473 S.W.2d 928 (Tex. 1971) ............................................................................... 10

*Fromson v. W. Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988) ............................................................................. 5

*Gardner by Gardner v. Parson*,
  874 F.2d 131 (3d Cir. 1989) ............................................................................... 12

*In re Moore*,
  209 U.S. 490 (1908) .............................................................................................. 9

*Jilani v. Jilani*,
  767 S.W.2d 671 (Tex. 1988) ............................................................................... 10

*Lassiter v. Dep't of Soc. Servs.*,
  452 U.S. 18 (1981) ...............................................................................................13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................................. 7

*Myers v. Loudoun Cnty. Pub. Schs.*,
  418 F.3d 395 (4th Cir. 2005) ............................................................................ 6, 7

*Tindall v. Poultney High Sch. Dist.*,
 414 F.3d 281 (2d Cir. 2005) .................................................................... 7, 8

*Ulmer v. Chancellor*,
 691 F.2d 209 (5th Cir. 1982) ........................................................................11

**Statutes**

28 U.S.C. § 1654 ................................................................................................ 8

Tex. Fam. Code § 151.001(a)(7) ..................................................................... 12

**Rules**

Tex. R. Civ. P. 44 ............................................................................................... 9

## ARGUMENT IN REPLY

**A.   Introduction.**

Dallas ISD's supplemental brief urges the Court to affirm the district court's sua sponte dismissal of Mrs. Raskin's claims for three mains reasons: (1) other federal courts rigidly apply the counsel mandate, so this Court should as well; (2) the policies underlying the counsel mandate—together with the remote possibility that Mrs. Raskin could obtain appointed counsel—justify the summary dismissal of her children's claims; and (3) the district court's dismissal, though it lacked any substantive analysis, satisfied both Rule 17(c) and Amicus's proposed factors.

None of Dallas ISD's arguments warrants affirmance. **First**, cases applying the counsel mandate are not always as consistent as Dallas ISD suggests. Though it quotes from many cases, Dallas ISD overlooks what the courts *did* in some of those cases versus what the courts *said*.[1] **Second**, while Dallas ISD rehashes the policies federal courts use to justify the counsel mandate, it fails to confront the problems of the judicially created rule. **Third**, the district court dismissed Mrs. Raskin's claims

---

[1] *Cf. Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1578 (Fed. Cir. 1988), *overruled by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004) ("Cases should not be cited for mere words. What counts is what the court did in a cited case.").

without conducting any meaningful analysis. Thus, the dismissal did not—indeed, could not—satisfy either Rule 17(c) or the factors urged by Amicus.

The Court should reverse and remand.

**B.  Federal courts do not uniformly apply the counsel mandate.**

Dallas ISD takes pains to cite as many cases as possible with language supporting the counsel mandate. But some cases on which Dallas ISD relies—even those ostensibly supporting the counsel mandate—either express serious reservations about it or nod approvingly at the mandate and then ignore it.

Consider *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395 (4th Cir. 2005). In that case, a nonlawyer father filed a complaint pro se on behalf of his minor children, and the district court permitted the father to litigate the claims—ignoring the counsel mandate. *Id.* at 399. On appeal, the Fourth Circuit broached the counsel mandate sua sponte and stated that the father "was not authorized to litigate pro se the claim of his minor children." *Id.* at 401. Under the rigid application of the counsel mandate suggested by Dallas ISD, the *Myers* court should have dismissed the appeal for lack of Article III standing or remanded it to the district court for dismissal. But it didn't.

Instead, the *Myers* court considered the appeal because its "resolution of the children's claim is based purely on an issue of law, and that claim is in no meaningful

way prejudiced by [the father's] pro se representation" in the district court.² *Id.* But consideration of such a case-specific nuance is not part of the counsel mandate. (On the contrary, it is one of the kind of factors this Amicus urges the Court to apply instead of a rigid counsel mandate.) So while it is easy to pluck wording from the *Myers* opinion seemingly supporting the counsel mandate, in fact the case skirts the mandate in favor of an ad hoc exception.

The same goes for *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281 (2d Cir. 2005) and *Elustra v. Mineo*, 595 F.3d 699 (7th Cir. 2010). Though both cases support the counsel mandate in a general way, both opinions are critical of applying the counsel mandate in the unyielding way Dallas ISD promotes. The *Tindall* court reluctantly applied the counsel mandate because of precedent. 414 F.3d at 285–86. The *Elustra* court refused to use the counsel mandate "[u]nder the circumstances" because strictly applying the mandate would have denied the children judicial review altogether. 595 F.3d at 707. Again, an exception.

---

² The *Myers* court also noted that the children's father had retained counsel on appeal. 418 F.3d at 401. But if the lack of counsel means there is a lack of Article III standing, as the district court held in Mrs. Raskin's case, it makes little sense to say that retention of counsel on appeal "cures" the jurisdictional defect that existed at the time of filing. After all, the general rule is that "standing is to be determined as of the commencement of the suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571–72 (1992). And post-filing events generally cannot cure a jurisdictional defect that existed at the time the original complaint was filed. *Camsoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, 756 F.3d 327, 337 (5th Cir. 2014).

These exceptions may be commendable given the circumstances. But ad hoc exceptions provide no guidance to district courts for when *they* should apply an exception. Indeed, as the caselaw stands, district courts do not even have the discretion to apply an exception.

**C.     The "policy grounds" do not support a rigid counsel mandate.**

**1.     The counsel mandate upends the Judiciary Act.**

The policies used to justify the counsel mandate are addressed in the opening Amicus brief, and Dallas ISD adds little to what courts have said before. But Dallas ISD's supplemental brief does highlight one of the fictions used to make the counsel mandate square with the Judiciary Act (28 U.S.C. § 1654), which codifies the right of citizens to represent themselves in federal courts. The counsel mandate naturally deviates from that rule, excluding children from the right conferred under the statute. *See Tindall*, 414 F.3d at 286 ("[The counsel mandate] seems to us to be in some tension with the general notion that a person may appear in court without the benefit (or expense) of professional assistance."). The Judiciary Act itself fails to distinguish between adults and children, and it neither grants to nor deprives parents of the right to represent their children pro se.

To square the counsel mandate with the statute's plain text, Dallas ISD argues that while children *do* have a statutory right to proceed pro se, they cannot exercise

it. Suppl. Br. at 12 ("[t]he choice to appear pro se is not a true choice for minors who under state law cannot determine their own legal actions. There is thus no individual choice to proceed pro se for courts to respect ….") (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). That makes no sense.

For one thing, that interpretation reserves **one** litigation choice—whether to retain counsel—to child litigants without explaining why that litigation choice differs from other litigation choices adult representatives are empowered to make. *See In re Moore*, 209 U.S. 490, 499 (1908) (next friend of minor litigant may select venue), *abrogated on other grounds by Ex parte Harding*, 219 U.S. 363 (1911); *see also* Tex. R. Civ. P. 44 ("next friend shall have the same rights concerning such suits as guardians have" and may "compromise suits and agree to judgments").

For another, framing the Judiciary Act like this provides children with a Hobson's choice. The child has the right to retain counsel. And the child has the exclusive right to waive counsel. But if the child waives counsel, courts disregard the waiver because the child cannot determine their own legal actions. That fiction leaves children (and their parents) with one choice: retain counsel.

2. **The counsel mandate is unnecessary to protect children's legal rights.**

Dallas ISD spends considerable time arguing that the counsel mandate is needed to help protect children from potential mistakes in their nonlawyer parents'

legal representation. By itself, that is not an unwarranted concern. But it presumes only two options: (1) representation by a pro se parent or (2) representation by an attorney. As discussed in the opening Amicus brief, there is an all-too-common third option: **no** representation. In those cases, it's hard to see how the child is better off with an intact—but unasserted—claim than she would have been had the parent at least *tried* to vindicate the claim, regardless of the actual outcome.[3]

Dallas ISD tries to solve this problem by claiming the counsel mandate goes together with dismissals without prejudice to ensure the child's claim is preserved until they reach majority. And in some cases, that may work. For example, if the child seeks only monetary damages for a discrete, past injury or wrong, then it may make little difference whether the child brings the claim now or years from now. But other claims—like those for injunctive relief or continuing wrongs—cannot wait. (The mask mandate here falls into this latter category.) Dallas ISD's only answer for these claims is that the district court can appoint an attorney to represent the child.

---

[3] Dallas ISD claims it is important not to let parents represent their children pro se in Texas because "minor children may not sue their parents for negligence." Suppl. Br. at 15 n.2. But that's not quite right. Parental immunity is limited to alleged acts of negligence that "involve a reasonable exercise of parental authority" (e.g., disciplining or supervising a child) or the exercise of "ordinary parental discretion with respect to the care and necessities of the child" that a parent is obligated to furnish. *See Jilani v. Jilani,* 767 S.W.2d 671, 672–73 (Tex. 1988); *Felderhoff v. Felderhoff,* 473 S.W.2d 928, 933 (Tex. 1971). Parental immunity does **not** shield claims predicated on legal duties such as contract or property rights. *See Jilani,* 767 S.W.2d at 672. Whether a quasi-legal malpractice claim by a child against a parent would qualify for immunity is unclear.

### 3. The remote possibility of obtaining appointed counsel does not cure the counsel mandate's ills.

To be sure, Dallas ISD makes much of the *possibility* of the district court's appointing counsel to represent children pro bono. That ignores reality. As this Court reiterated in *Delaughter v. Woodall*—a case Dallas ISD itself cites—district courts should appoint counsel in civil cases when they present "exceptional circumstances." 909 F.3d 130, 140–41 (5th Cir. 2018). The idea that district courts will (or can) routinely appoint counsel in more run-of-the-mill cases—even those involving minor children—is simply impractical.

What's more, the factors district courts use when considering the appointment of counsel mirror the case-by-case factors this Amicus urges the Court to weigh in place of the counsel mandate.[4] Curiously, Dallas ISD urges the Court **not** to adopt Amicus's suggested case-by-case approach, claiming it is unworkable and creates more problems than it solves. Yet Dallas ISD never explains why a similar case-by-case inquiry for appointing counsel is any less "unworkable" or easier for district courts to apply.

---

[4] To appoint counsel, district courts consider: (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is able to investigate the case adequately; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination. *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (citations omitted).

### 4. The counsel mandate does not properly defer to state law.

Dallas ISD also argues that the counsel mandate does not infringe the constitutional rights of children to access the courts because Texas, not federal, law governs that right. Dallas ISD then lays out how Texas children can access the courts: through a legal guardian, "next friend," or guardian ad litem. Suppl. Br. at 26. That much is true. *See, e.g.*, Tex. Fam. Code § 151.001(a)(7) (parent has "the right to represent the child in legal action and make other decisions of substantial legal significance concerning the child").

But what's equally true is that the counsel mandate largely ignores that scheme and requires not only a legal guardian or next friend but also legal counsel. Adding barriers to court access, like the counsel mandate, clashes with the framework for court access crafted by the Texas Legislature.

### D. The district court's summary dismissal did not satisfy Rule 17(c).

Dallas ISD next claims the district court's sua sponte dismissal somehow satisfied its obligation to evaluate "the merits of the suit relative to the child's best interests." *Gardner by Gardner v. Parson*, 874 F.2d 131, 140 (3d Cir. 1989) (discussing Rule 17(c)). But other than determining that Mrs. Raskin was proceeding pro se, the district court didn't evaluate anything.

Dallas ISD responds by saying that Mrs. Raskin could have requested appointed counsel. Conspicuously, however, Dallas ISD does not opine as to whether this case is one of those "exceptional circumstances" even *eligible* for appointed counsel.[5] It seems safe to say that Dallas ISD would have argued to the district court that this case is not exceptional, complicating the odds of Mrs. Raskin obtaining pro bono counsel.

Dallas ISD also emphasizes a state-court lawsuit involving Mrs. Raskin against Dallas ISD—what it calls the "*Jenkins* Lawsuit." Suppl. Br. at 21. Presumably, Dallas ISD wants the Court to know that Mrs. Raskin was represented by counsel in one case, thus suggesting that her lack of representation here is somehow contradictory. But Dallas ISD's use of the *Jenkins* Lawsuit—which appears to involve a host of parties besides Mrs. Raskin—raises more questions than it answers. For example, did Mrs. Raskin pay for representation in the *Jenkins* Lawsuit? Did paying for that representation deplete family funds to the extent that she could not pay for representation here? Are there differences in the two cases making counsel more necessary in one than the other? The record does not answer any of these questions because neither Dallas ISD nor the district court ever asked them.

---

[5] There is generally no federal right to counsel in civil cases. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26–27 (1981).

The district court could have set a hearing and explored why Mrs. Raskin did not retain counsel, whether counsel was necessary to advance the claims here, and whether it should appoint counsel. But the district court dismissed the case outright. That dismissal did not comply with the letter or spirit of Rule 17(c).

E.  **A case-by-case application of the counsel mandate would effectively protect children's legal claims while providing more equitable court access.**

As a fallback, Dallas ISD argues against the case-by-case approach to the counsel mandate advocated by this Amicus.

*First*, Dallas ISD conjures hypotheticals about how federal courts could permit wealthy parents to proceed pro se while requiring poorer parents to obtain counsel. Suppl. Br. at 28. Or federal courts could permit the same parent to represent the child pro se in one case but not another. *Id.* at 29. Those disparate outcomes are possible. But only in the same way disparate jury verdicts are possible. Or in the way two courts might rule differently on the same parent's request for the appointment of counsel. At bottom, Dallas ISD's argument is little more than an unremarkable observation that district courts—like juries—have discretion and can reach different results in seemingly similar cases.

*Second*, Dallas ISD's suggestion that the Court could apply this Amicus's proposed case-by-case analysis and then affirm the dismissal is unsupportable. The

district court did not make any findings or perform any analysis like the one urged by this Amicus. In truth, Dallas ISD wants *this* Court to take on the district court's role and weigh the factors itself. But even if the Court were inclined to become a factfinder, the record here is too sparse to permit any meaningful determination about the best interests of Mrs. Raskin's children. Thus, the Court should reverse and remand to permit the district court to conduct the appropriate analysis.

## Conclusion & Prayer

Amicus urges the Court to reverse the district court's dismissal and remand for the district court to consider the merits of the suit relative to the best interests of Mrs. Raskin's children. If necessary, the Court should (re)consider the application of the counsel mandate en banc.

Dated: September 20, 2022.    Respectfully submitted,

*/s/ Cody W. Stafford*
Cody W. Stafford
Dobrowski Stafford LLP
4601 Washington Avenue, Suite 300
Houston, Texas 77007
(713) 659-2900
cstafford@doblaw.com

*Court-Appointed Amicus Curiae*

## Certificate of Service

I hereby certify that on September 20, 2022, a true and correct copy of the foregoing document was served via the Court's Appellate CM/ECF system on all counsel of record.

*/s/ Cody W. Stafford*
Cody W. Stafford
*Counsel of Record*

## Certificate of Compliance

This brief complies with the (1) type-volume limitation of Fed. R. App. P. 29(d) because it contains 2,652 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and (2) typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Fifth Cir. R. 32.1 because it has been prepared in a proportionally spaced typeface using 14-point font with 13-point font in the footnotes.

*/s/ Cody W. Stafford*
Cody W. Stafford
*Counsel of Record*